# Richmond

RAYMOND H. MITCHELL v. ELSIE C. WILKERSON.

December 3, 1951.

Record No. 3832.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*M. E. Evans, Arthur B. Davies, III* and *John L. Abbot*, for the plaintiff in error.

*Edmunds, Whitehead, Baldwin & Graves,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Elsie C. Wilkerson filed her notice of motion for judgment in the court below against Raymond H. Mitchell to recover damages

for personal injuries alleged to have been sustained when a truck in which she was riding as a guest overturned while it was being driven by Mitchell southwardly along Campbell avenue between 16th and 17th streets, in the city of Lynchburg. There was a jury trial below which resulted in a verdict and judgment for the plaintiff. On this writ of error the defendant below asks a reversal of the judgment because of the alleged errors of the lower court in instructing the jury and its refusal to set the verdict aside and render a final judgment in his favor. The parties will be referred to as they appeared in the trial court.

There is little conflict in the evidence. On January 13, 1950, about 6:00 p. m., Mitchell called at the home of Mrs. Wilkerson in Lynchburg, and after each of them had taken two drinks of whiskey from a bottle which Mitchell had brought with him, he invited her to have dinner with him. She agreed to do so provided he would leave the bottle of whiskey at her house and "promise not to drink any more." Mitchell agreed to this and about 7:00 p. m. they left the Wilkerson home in Mitchell's Dodge panel-body truck for "Wimpy's," a "club" or restaurant on Forest road west of Lynchburg, where they had dinner. Before dinner Mitchell, without the knowledge of Mrs. Wilkerson, had a drink at the restaurant with another friend.

About 11:00 p. m. Mitchell and Mrs. Wilkerson left "Wimpy's" to go to "Hilltop," another restaurant or "club" on Route 460 east of Lynchburg. They stopped at "College Lake" where Mitchell, after having excused himself, without Mrs. Wilkerson's knowledge took another drink from a bottle which he produced from the glove compartment of the truck.

The couple then drove to 12th street and Campbell avenue where after waiting for the traffic light to change, they turned right and proceeded southwardly along Campbell avenue which led out of the city toward "Hilltop," their next destination.

The undisputed evidence is that Campbell avenue from 15th to 17th streets is 32 feet wide, from 5 to 8.6 per cent. downgrade, and lighted by street lights at each intersection. At the time the surface of the pavement was "sweaty" and slippery.

As the truck proceeded southwardly along Campbell avenue, between 16th and 17th streets, the driver lost control of it. The vehicle veered sharply to the right, climbed the curb, went across the sidewalk which is elevated more than three feet above the level of the street pavement, uprooted and broke off a tree eight

inches in diameter located near the sidewalk, and overturned on its left side. The driver was pinned beneath the vehicle. The plaintiff's head was "jammed between the steering wheel and the dashboard," she was rendered unconscious and received severe injuries about the head and face. The front of the truck was badly damaged.

Because of the nature and severity of her injuries, Mrs. Wilkerson had no recollection of what occurred after the truck had passed the intersection at 12th street.

According to Mitchell, while proceeding along Campbell avenue between 16th and 17th streets, at a speed of from 20 to 25 miles per hour, he observed a car parked on the western side of Campbell avenue—that is, on his right; he cut to his left, passed the parked car safely, and was then confronted with a truck coming from the opposite direction. In an effort to avoid a collision with the latter vehicle he cut his truck sharply to the right, it skidded, he lost control of it, and it turned over.

Robert Brook, who was walking northwardly along the eastern side of Campbell avenue between 15th and 16th streets, casually observed the Mitchell truck as it passed him. A moment later he heard the sound of "tires crying," followed quickly by the loud noise of the crash. He saw no truck such as that which Mitchell said had precipitated the crash.

Shortly after Mitchell had been taken to the hospital he was interviewed by two police officers. One described his condition as being "noticeably under the influence of intoxicants," while the other said that he had been "drinking pretty heavy."

Several years prior to the accident the council of the city of Lynchburg enacted an ordinance fixing "special speed limits in congested and dangerous areas." Embraced within this ordinance was a provision fixing the maximum speed limit at 15 miles per hour along Campbell avenue from 14th street to a railway underpass south of 17th street. The ordinance authorized and directed the city manager to have signs erected "so as to clearly indicate the speed limits" fixed therein, and provided that, "After such signs have been erected, or the streets otherwise marked," it should be unlawful for any person to exceed the specified limits.

At the time of the accident there was no sign at 14th street and Campbell avenue indicating the northern limit of the restricted speed zone. At 15th street and Campbell avenue, a

block and a half north of the scene of the accident, there was a sign which read "SPEED LIMIT 15 MILES." This sign was located above a large conspicuous yellow sign with reflectors on it, reading "CAUTION-DANGER-UNDERPASS."

Although Mitchell admitted that he was familiar with the locality and traveled it "several times a week," he did not notice the signs, or either of them.

The trial court held and over the objection of the defendant instructed the jury, that it was his duty while driving southwardly along Campbell avenue, among other things, "not to exceed the speed limit of fifteen miles per hour."

This ruling is assigned as error on the ground that the ordinance restricting the speed limit was not effective at the point of the accident, because, it is said, the sign was not placed or posted in the manner required by the statute (Code, § 46-212) and the ordinance.

The argument is that Code, § 46-212(2)(d), permits "the authorities of cities and towns" to restrict the speed in "congested areas" or at "dangerous points" on the highways running through their respective territories, provided "such areas or points are clearly indicated by markers or signs;" that the local ordinance requires the posting of signs "to clearly indicate the speed limits fixed," and prohibits the operation of vehicles in excess of the restricted speed limit only "after such signs have been erected, or the streets otherwise marked;" and that under these provisions the sign should have been placed at the 14th street intersection, where the restricted zone begins, and not at 15th street, a point within the zone. Moreover, the defendant argues, the restricted zone was not clearly marked or indicated, as required by the statute and ordinance, because the speed limit sign was placed adjacent to the more conspicuous underpass sign.

In our opinion neither of these points is well taken. There is no provision in either the statute or ordinance that the required signs be placed at the beginning of the restricted zone, or at any particular place along the street.

It is true, as the cases relied on by the defendant show, that where a statute or ordinance restricting the speed limit requires the erection of signs, such signs are essential. But it is generally held that a substantial compliance with the provisions as to the location or placing of such signs is sufficient to make the

regulation valid and effective. Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 1, § 736, p. 633; 60 C. J. S., Motor Vehicles, § 30, p. 152; *Pilgrim* v. *Brown*, 168 Iowa 177, 150 N. W. 1; *People* v. *Hirshon*, 43 N. Y. S. (2d) 764.

The obvious purpose of the provision in the statute and local ordinance requiring the display of signs is to notify or warn the operator of an automobile of the speed restriction in that zone or area. If a proper sign was installed at 15th street it was sufficient to give warning to the operator of a southbound car that he was then in a restricted zone and make the ordinance effective there. Since the accident happened south of the sign and well within the restricted zone, we are not concerned with whether its posting or display was sufficient to make the ordinance effective in the preceding block between 14th and 15th streets.

■■ It is argued that placing the smaller speed limit sign adjacent to the larger and more conspicuous underpass sign had the effect of distracting the attention of the driver from the speed limit sign and focusing it on the other sign. This is mere speculation for there is no evidence to support this view and no evidence that the defendant was confused or in any way misled by the two signs. It is a matter of common knowledge that frequently several signs for the regulation or direction of traffic are placed contiguous to one another. If we are to speculate about the matter, it would seem that the combination of the signs, one containing the words "CAUTION-DANGER" surrounded by reflectors, would more probably attract the attention of a motorist to both hazards than otherwise.

We are of opinion that there was a substantial compliance with the provisions of the statute and the ordinance with respect to the posting of the sign, and that, therefore, the court was correct in holding that the restricted speed limit was in effect at the place where the accident occurred.

The final contention of the defendant is that the evidence adduced does not warrant the finding that he was guilty of "gross negligence or willful and wanton disregard of the safety" of the plaintiff, as is necessary under Code, § 8-646.1, to sustain a recovery against him in favor of the plaintiff who was a gratuitous passenger in his vehicle.

There was no objection on the part of the defendant to any of the instructions in so far as they defined gross negligence.

Plaintiff's Instruction No. 1, after telling the jury that it was

the duty of the defendant to "use slight care" to keep his truck under proper control, to keep a proper lookout, not to drive the truck in a careless and reckless manner, not to exceed the speed limit of 15 miles per hour, not to exceed a reasonable speed under the circumstances and traffic conditions existing at the time, and not to drive while under the influence of intoxicants, concluded with this language: "That these were continuing duties to be exercised when. they would be reasonably effective and that if you believe from a preponderance of the evidence that the defendant, Raymond H. Mitchell, *violated two or more of his said duties, you may find him guilty of gross negligence.*" (Italics supplied.)

Although, as has been said, there was no objection to the form of the instruction, the italicized language is not a correct statement of the principle of law there sought to be applied. It is true, as counsel for the plaintiff points out, that certain language used in *Lipscomb* v. *O'Brien,* 181 Va. 471, 477, 25 S. E. (2d) 261, 263, may seem to approve the instruction as written. But if we advert to our earlier cases, where the subject is fully discussed, we will see that something more than a mere breach of two or more statutory duties imposed upon a driver is required in order to sustain a finding that he has been guilty of gross negligence.

*Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310, was the first case in which we dealt with the subject as to when and under what circumstances a combination of instances of ordinary negligence may constitute gross negligence. In that case we said: "* * * if a number of acts of omission and commission are so combined that reasonable and fair-minded men may differ as to whether the cumulative effect thereof evinces a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury" whether such negligence amounts to gross negligence. (167 Va., at page 314, 189 S. E., at page 313.) See also, *Wright* v. *Swain,* 168 Va. 315, 318, 191 S. E. 611, 612.

We adhere to the statement of the principle as announced in the cases last cited. Since no objection was made in the trial court, and there was no assignment of error, to the incorporation of the italicized language in the instruction, we are not called upon to consider whether or not it was reversible error. Rules 1:8; 5:1, § 4.

Plaintiff's Instruction "2" and defendant's Instruction "A"

correctly submitted to the jury whether the plaintiff had proved by a preponderance of the evidence that the defendant was guilty of gross negligence. Code, § 8-646.1.

We are of opinion that the evidence is sufficient to warrant a finding that the defendant was guilty of gross negligence as defined in the instructions.

There was evidence from which the jury could have found that the defendant was driving the truck while under the influence of intoxicating liquor. Admittedly, he had taken four drinks during the evening and one within a short time of the accident. The testimony of the police officers who interviewed him at the hospital tended to show that he was under the influence of liquor. Indeed, the defendant did not flatly deny this. When asked about the matter by his own counsel, his reply was, "I don't think I was under the influence of it to have any effect on my driving."

Driving a motor vehicle while under the influence of intoxicants is universally recognized as creating a very serious hazard on the highways. It is made a criminal offense carrying severe penalties under our statutes. Code, § 18-75 *ff*.

Coupled with evidence that the defendant was under the influence of intoxicating liquor there is the further evidence from which the jury might have inferred that he was not keeping a proper lookout and did not have his vehicle under proper control, taking into consideration that it was proceeding downgrade on a slippery street through a plainly marked danger zone.

Although the evidence is undisputed that the street was well lighted, the defendant admitted to the plaintiff that he did not see the parked automobile, which he said made it necessary for him to divert his course, "until he was right at it." After having passed the parked vehicle he claims that the approach of an oncoming truck necessitated his cutting his vehicle sharply to the right to avoid a collision therewith. It was this sharp turn, he said, which made him lose control of his vehicle and caused it to turn over. He did not explain why he was not able to foresee and avoid this situation while operating along the 32-foot street, with the single parked automobile in front of him. Manifestly, the emergency to which he attributed his loss of control of the vehicle was of his own making.

The defendant admitted that just before the accident he was proceeding at from 20 to 25 miles an hour, which was in excess

of the speed limit fixed by the ordinance for this "congested and dangerous" area. But there are these physical facts which warranted a finding that he was proceeding at a much greater speed than he admitted: The sound of "tires crying," just before the crash; the fact that the truck crossed the curb, went up a 3-foot embankment, uprooted and broke off a large tree, and overturned with a noise likened by one of the witnesses to "a freight train starting out on a hill." Such physical facts warrant the inference of excessive speed despite uncontradicted oral testimony to the contrary. *Davis* v. *Webb,* 189 Va. 80, 85, 52 S. E. (2d) 141, 143, and cases there cited.

Under all of the evidence adduced it was for the jury to say whether the defendant's loss of control of his vehicle was due to mere inadvertence, or lack of ordinary care, or to gross negligence as defined in the instructions.

For these reasons the judgment is

*Affirmed.*