# Richmond

JOSEF SOLTERER v. MAGDALENA KISS.
JOSEF SOLTERER v. LASZLO KISS.

April 21, 1952.

Record Nos. 3910, 3911.

Present, All the Justices.

The opinion states the case.

*Armistead L. Boothe, W. W. Koontz* and *Alfred W. Trueax,* for the plaintiff in error.

*S. Gail Landon, Jr.* and *Frank F. Roberson,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

Magdalena Kiss, appellee in Record No. 3910, and Laszlo Kiss, her husband, appellee in Record No. 3911, instituted actions in the Circuit Court of Fairfax county on February 11, 1950, alleging gross negligence and seeking damages for personal injuries against appellant, Josef Solterer.

The cases grew out of an intersection collision involving a Chevrolet automobile owned and operated by appellant in which appellees were riding as guests, and a Hudson coupe driven by John D. Meyers. The suits were tried together on January 9, 1951, with Meyers joined as a party defendant.

The trial resulted in two verdicts against Solterer, one in favor of Magdalena Kiss in the sum of $5,000, and the other in favor of Laszlo Kiss in the sum of $10,000. The verdict in each case exonerated Meyers from negligence and therefore he is not here involved.

Solterer moved the trial court to set aside the verdicts and grant new trials or to enter final judgments in his favor, which motions were overruled, whereupon final judgments were entered upon the verdicts and writs of error were granted.

The transcript of testimony, the exhibits, instructions and other incidents of trial were the same in both cases and by stipulation of counsel have been made a part of one record to be considered upon appeal to this court, where they were jointly argued and submitted.

The accident occurred on Sunday, September 25, 1949, about 1:30 p. m. The day was clear and the road was dry. The scene of the wreck was in Fairfax county at the intersection of Routes 7 and 676. The record shows Route 7 to be a primary

highway and Route 676 a secondary highway. Route 7 runs in an easterly-westerly direction and is a straight road at and near the intersection. There is a descending grade immediately west of the intersection. Its asphalt or bituminous surface is approximately 24 feet wide with broken white lines marking the center. There were no warning or stop signs at the intersection on either road. The speed limit on Route 7 at the point of intersection was 50 miles per hour.

Route 676 approaches Route 7 from the south on a downgrade and intersects the southerly side of it at a right angle. Route 676 is a hard surface road, covered with stone, which extends to the improved driving portion of Route 7, at which point it widens into a "Y" shape.

Andrews Chapel is located on a bank on the southwest corner of the intersection. This bank is 10 or 12 feet high and extends to within a few feet of Route 7. A roadway leading from the chapel descends in a northeasterly direction and enters Routes 7 and 676 near the intersection. The bank obstructs the view of a driver traveling north into Route 7, so that he must be "right up in the intersection" or "within two to four feet" of the hard surface of Route 7 before he can see west on Route 7 and proceed safely into it.

Appellant contends that the intersection is made deceptive by the fact that in the construction of the chapel road it was necessary to cut down a portion of the bank on the west of Route 676, causing a "double lip of the bank" and thus "a driver going north on Route 676, having passed the southerly 'lip', actually a little over 36 feet from the pavement of Route 7, feels (that) he has passed the obstruction to his vision."

On the day in question Solterer drove his automobile north on Route 676, with Laszlo Kiss seated beside him and Magdalena Kiss in the rear seat. Solterer said that he was confused by the roadway leading to the chapel and contends that he stopped his car near that road, looked down the same and thought that the way was clear to the west on Route 7. He at no time stopped near enough to the intersection to see down Route 7 to the west. Whether he was misled by the "lips" to the chapel road or not, the fact remains that he did not effectively stop before entering Route 7 and that he drove his car from this blind corner into primary Route 7, immediately into the eastbound lane of the Meyers car.

Lee W. Charters was in a jeep traveling west in the northern lane of Route 7 at the time and as he approached the intersection he saw Solterer drive into the path of the eastbound Meyers car without stopping, and sensing that a collision was inevitable, in a frantic effort to stop before becoming involved, he turned the jeep over.

The picture exhibits of the two cars show and the evidence discloses that the front of the Meyers car struck the Solterer car on the left side, the impact being on the door next to the driver. State Trooper David McCollum testified that he examined the scene of the wreck and from the location of the debris and glass in the road it appeared that when the Solterer car was struck it was about a car length west of the center of the intersection and about the center line of the highway.

Appellees were injured and taken to the hospital. They were Hungarian citizens, displaced persons, who had been in this country only a short while. They spoke German but could not speak English. Solterer was also injured and taken to the same hospital in Arlington. He and Laszlo Kiss occupied the same room. Solterer was born in Austria and had been a naturalized American citizen since 1932. He spoke English and could also speak German fluently.

While Solterer and Kiss were in the hospital, insurance adjuster Kinney came to see them. Kinney represented a company which had a limited liability policy on Solterer's car, and the purpose of his visit was to investigate the accident. He secured a written statement in German from Kiss in the following manner: Kinney would suggest the questions to Solterer who passed them on to Kiss. Solterer then wrote down the questions and answers in German and when completed Kiss signed the paper. The statement, with material discrepancies, was later translated into English and transcribed by someone whose identity is not made clear.

At the trial, under cross-examination, Laszlo Kiss was asked the following question through an interpreter: "Now do you recall that on the 30th day of September, 1949, five days after the accident, you dictated in German and Dr. Solterer wrote down in German your statement as to how this accident happened?" Appellees objected to the question and asked to be heard upon its admissibility in the absence of the jury. In chambers it was stated that the objection to the question was based upon the ground that the written statement of Kiss could not be used

to contradict him as it would violate the provisions of section 8-293 of the Virginia Code. In addition to this objection it was asserted that if appellant insisted upon this line of cross-examination, appellees should be permitted to show the surrounding circumstances under which the statement was secured. It was asserted that the circumstances were unusual and for this reason the jury should know who was present when the statement was taken, their interest in the case, who propounded the questions and who wrote the answers.

This brings us to the first assignment of error which is stated by appellant as follows:

"1. The court erred in refusing to permit the defendants' counsel unconditionally to cross-examine and contradict the witness Laszlo Kiss, before the jury, as to crucially relevant statements made by him to the defendant on September 30, 1949."

We have interpreted the effect of section 8-293 which deals with the limitations on cross-examination of a witness as to previous statements made by him in writing and it is not here necessary to consider this further. *Harris* v. *Harrington,* 180 Va. 210, 219, 22 S. E. (2d) 13.

The unusual question here presented goes beyond the provisions of section 8-293. Here the attorney for appellant was attempting to cross-examine Kiss upon the statement written in German which had been secured through questions propounded in English by the adjuster to appellant Solterer, and by him passed on in German to Kiss. The answers in German were transcribed by appellant.

The adjuster was vitally interested in a favorable statement, and as the suit was for an amount in excess of the policy limits, Solterer was also interested. The court felt that under the circumstances the jury would be entitled to know the interest of the parties who would seek to impeach Kiss and indicated what his ruling would be if the cross-examination was pursued. Addressing the attorney for appellant, the court said: "However, the thing that bothers me about this case is not so much the admissibility of this evidence which you are seeking to introduce, but whether or not the plaintiff then hasn't got the right to put before the jury all of the facts and circumstances surrounding the making of that statement (and) who was present when it was made. * * *

"You have a statement made by Dr. Kiss, who is certainly an interested party. That statement is reduced to writing by

Dr. Solterer, an interested party, and it is reduced to writing in English by a person who is more interested than Dr. Solterer. For that reason I am not going to admit this in evidence unless we go ahead and show everything.''

We feel that under the peculiar circumstances here presented it would have been unfair to withhold the interests of the procurers of the statement from the jury. It was suggested that the jury might be told that Kinney was an attorney,—it so happened that he was,—but in addition to that he was acting as an insurance adjuster and was there for the purpose of procuring the most favorable statement he could from Kiss in order to protect his company, and the jury was entitled to know the facts. They were entitled to know that "The voice is Jacob's voice, but the hands are the hands of Esau".

When the court indicated its ruling appellant elected to desist from this line of cross-examination. We feel that the ruling of the court was proper under the related circumstances.

The second assignment of error relied upon by appellant is that the court erred in granting instruction 12 on behalf of the appellees. There is no objection to the instruction as written, but appellant contends that it has no application to the facts in the case, that the "scintilla doctrine" has been abolished in Virginia and unless there is substantial evidence to support the instruction it should not be given. *Chesapeake, etc., R. Co.* v. *Crum,* 140 Va. 333, 125 S. E. 301.

The instruction is based upon Virginia Code, § 46-231, which provides, in part: "Drivers of vehicles * * * when turning to the left, shall pass beyond the center of the intersection and as closely as practicable to the right of the center of such intersection before turning such vehicle to the left; * * *''.

It is conceded that Solterer intended to go west on Route 7 which would have necessitated his making a left turn at the intersection. There is evidence that at the time of the accident he apparently was proceeding straight across Route 7 and had made no effort to negotiate a left turn. On the other hand there is evidence that he had attempted to turn left on Route 7 without complying with the statute. Trooper McCollum says that from his investigation of the scene he placed the impact about a car length west of the center of the intersection. This would indicate that Solterer came out of the intersection and immediately turned west to his left on Route 7. This being so, it was proper for the court to give the instruction, leaving it, as the

instruction did, for the jury to say whether or not the violation, if any, was a proximate cause of the accident.

The remaining assignment stressed by appellant deals with the sufficiency of the evidence to sustain the verdicts and judgments against Solterer, predicated upon the theory that he was guilty of gross negligence which proximately caused the injuries to appellees. A finding of gross negligence is necessary in order to warrant a judgment in favor of a guest against a host under our statute, Virginia Code, § 8-646.1.

The evidence clearly shows that appellant did not stop his car at a point near enough to the intersection to look and see that Route 7 was free from oncoming traffic. He contends that he was misled and confused by the roadway leading to Andrews Chapel, but be that as it may, after he stopped on Route 676 before reaching the intersection, he knew when he started his car and approached Route 7 that he should stop before entering this primary road. The evidence shows that he made no effort to stop at a point from which he could see west on Route 7 but instead he continued to drive his car from its hidden position on Route 676 directly into the path of the eastbound Meyers car.

From the evidence of Trooper McCollum the jury had a right to infer that appellant cut the corner of the intersection as he entered it, in violation of section 46-231. McCollum says that he determined the point of impact to be a car length west of the center of the intersection and that the left front of the Meyers car "took the brunt of the blow". It is conceded that appellant's destination was west, to his left, on Route 7. If appellant did cut the corner, of necessity his car was occupying Meyers' lane of travel for a longer period of time than it would have had appellant complied with the statute and passed "beyond the center of the intersection and as closely as practicable to the right of the center" before attempting to turn left.

There is also evidence from which the jury could infer that appellant approached the intersection and while entering same failed to look west to see if the southern lane of travel, which he was to block immediately, was clear and free of traffic, but that instead he was looking in the direction of the Charters jeep which was approaching from the east and which was occupying the northern lane of travel on Route 7 across from appellant.

The observations and conduct of Charters, who witnessed the collision, lend weight in determining the degree of Solterer's negligence. As heretofore noted, Charters was approaching the intersection, traveling west. He was occupying the northern lane of Route 7 and says: "When I first noticed the car * * * it was probably two, three or maybe four car lengths away from the intersection, and he was going at a slow rate of speed, and I felt that the car was probably going to stop, but I kept watching the car and it didn't stop but just kept on proceeding at the same speed. I thought that that would be a very difficult situation if somebody were coming. * * *

"I looked down the road to see if another car was coming east on Route 7 and there was. I was applying my brakes at the time because there was going to be a smash-up. I watched the car proceed out of Route 676 to Route 7 going in a straight line, as far as I could tell making no attempt to turn.

"I cut the wheels of the jeep to the left and finished standing on the brakes and watching the two cars meet, and just about at the time the car on 676 was hit by the car coming east which I had seen for a very short time the jeep turned over and I ended up on the south side of Route 7 heading east."

The jury, under proper instructions, has determined that appellant was guilty of gross negligence, the verdicts bear the stamp of approval of the trial judge, and unless they are plainly wrong we should not disturb them.

We held in *Margiotta* v. *Aycock,* 162 Va. 557, 565, 174 S. E. 831: "Of course the jury's verdict is not always conclusive. In cases of ordinary negligence this court has always freely exercised its right to say that it is unsupported by the evidence. By the same token it has the right to say, notwithstanding the verdict, that there is no evidence whatever of gross negligence. *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63; *Young* v. *Dyer,* 161 Va. 434, 170 S. E. 737, and *White* v. *Gregory,* 161 Va. 414, 170 S. E. 739. No such question, however, arises here. If we accept as true the evidence for the defendants, they are guilty of no negligence at all. If plaintiff's witnesses are to be believed, they are guilty of the grossest negligence."

Mr. Justice Browning, in the case of *Yonker* v. *Williams,* 169 Va. 294, 301, 192 S. E. 753, had this to say:

"This court held, in the case of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, and subsequently in a number of kindred cases, that there must be present gross negligence upon the part of

the host to fix or establish liability upon him for injury to an invited guest riding in his automobile.

"That view is approved by courts of last resort in many jurisdictions. We adhere to it, without implying that such adherence in anywise weakens or disturbs the ancient and settled doctrine that controverted issues of negligence are for the jury to decide, upon the facts of the particular case."

Appellant cites *Doub* v. *Weaver,* 164 Va. 96, 178 S. E. 794, and *Reel* v. *Spencer,* 187 Va. 530, 47 S. E. (2d) 359, for the proposition that mere inadvertence and failure to observe another car in intersection collisions does not constitute gross negligence. A reading of these cases will show that the facts disclosed differ from the facts in the instant cases.

As said by Mr. Justice Eggleston in *Mitchell* v. *Wilkerson, ante,* p. 121, 129, 67 S. E. (2d) 912, "Under all of the evidence adduced it was for the jury to say whether the defendant's loss of control of his vehicle was due to mere inadvertence, or lack of ordinary care, or to gross negligence as defined in the instructions."

We held in *McDowell* v. *Dye, ante,* p. 390, 69 S. E. (2d) 459:

"The trial judge and the jury * * * saw the witnesses while testifying and were in a position to evaluate the evidence adduced before them. In such instances they have the advantage over an appellate court.

"Whether the conduct of a person operating an automobile amounts to gross negligence within the meaning of Code, § 8-646.1 depends upon the facts and circumstances surrounding the operation. The element of time incident to the accident must be considered with the surrounding circumstances in determining whether the driver's conduct constitutes gross negligence. One degree of care sufficient under certain circumstances may amount to gross negligence under others. If reasonable men may differ upon the question then a jury problem is presented." See also *Mitchell* v. *Wilkerson, supra; Watson* v. *Coles,* 170 Va. 141, 145, 195 S. E. 506; 2 M. J., Va. and W. Va., Automobiles, § 44, page 502; 60 C. J. S., Motor Vehicles, § 258(c), page 633, and § 399(4), page 998.

The evidence here presented a jury question as to the degree of Solterer's negligence, and the jury's finding of gross negligence, approved by the trial court, will not be disturbed.

We find no merit in the other assignments of error, and for the reasons stated, the judgments are affirmed.

*Affirmed.*