# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

VIRGINIA CARR v. FLORA PATRAM.

April 21, 1952.

Record No. 3884.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Thomas A. Williams* and *Thomas A. Williams, Jr.,* for the plaintiff in error.

*J. B. Browder,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

Virginia Carr, while riding as a guest in an automobile operated by her mother, Flora Patram, was severely injured when the car left the highway and overturned. She instituted this action against her mother to recover damages for personal injuries. The jury returned a verdict for defendant, Flora Patram, and judgment was entered thereon.

The parties will be hereinafter referred to in accordance with the respective positions they occupied in the lower court.

The trial court submitted to the jury the issues of whether or not defendant was guilty of gross negligence and whether or not plaintiff was guilty of contributory negligence.

Plaintiff complains that the court erred in its instructions to the jury and its refusal to set aside the verdict as contrary to the law and evidence. Specifically, she contends that there was no evidence of contributory negligence and that the court erred in refusing to instruct to that effect and by submitting that issue to the jury. She also insists that Instruction F, given at the instance of the defendant, was confusing, misleading and erroneous. These errors, she says, require the judgment be reversed and a new trial granted.

Defendant contends that no error was committed in respect to the instructions given or refused. She also earnestly insists that though viewed in the light most favorable to the plaintiff, the evidence fails to establish gross negligence. Stated otherwise, she says that had a verdict been rendered in favor of plaintiff and judgment entered thereon, the evidence would not sustain it, and thus the errors, if any, committed by giving or refusing any instructions are wholly immaterial.

We agree with plaintiff that there was no evidence of contributory negligence that justified submission of that issue to the jury and that the phraseology of Instruction F was not correct. Yet if the evidence is such as to preclude submission of the issue of gross negligence to the jury, these errors become im-

material and the judgment must be affirmed. Therefore we turn to and review the evidence.

The mishap occurred about 11:30 a.m., June 24, 1949, on Route 360 about seven miles west of the city of Richmond. At the place where the accident happened, the highway is an undulating, macadamized road approximately 22 feet wide. The day was clear and hot and the surface of the road dry. The defendant, a 66 year old lady, was driving a 1937 Chevrolet automobile which had recently been inspected and was in good condition. There were no known or discernible defects in the car or its tires. Riding with the defendant were the plaintiff and three elderly ladies. The plaintiff and two of these ladies were riding on the back seat, and the other passenger occupied the front seat with the defendant.

Plaintiff testified that as the automobile approached the crest of a slight hill, she heard a bump or knock under the car and called it to the attention of defendant. She further said that shortly or immediately thereafter, the exact time or distance not being given, but as the car proceeded down the hill, it began to swerve, and it zigzagged three or four times from one side of the road to the other and gained speed. She said to her mother "What is the matter?", and the latter replied, "I don't know * * * I don't know what to do with it." Though the witness does not drive a car herself, she expressed an opinion that the car had reached a speed of some 75 or 80 miles an hour when it left the highway at a point on the left side of the road which she estimated to be about 300 to 400 feet from where it first began to swerve and gain speed. The car went down an embankment, turned over twice and came to rest on its wheels in a side road at a point 71 feet distant from where it left Route 360. Upon examination it was found that the right rear tire had blown out. When State Trooper C. W. Randall arrived at the scene shortly after the accident and inquired of the plaintiff as to what happened, she replied, "Must have had a flat tire."

Three other parties, James A. Wigfield, Maude E. Montgomery, and F. L. Carr, went to the scene after the accident and testified on behalf of the plaintiff. They stated that the point where the car left the highway on the left side was easily discernible. The physical marks indicated that the car went down a bank about seven or eight feet and through the saplings, weeds and brush on to where it came to rest on the side road. From the

place where it left the highway, its course, they said, could be traced back up the road by tire marks on the highway which "waved" or "zigzagged" back and forth over a distance estimated at "maybe 300-400 feet." These witnesses did not measure or step off the distance that the tire marks were discernible upon the highway, but two of them examined the road, and one of them said:

"No, sir, they were not brake marks. It looked as if the tire had been just, tire marks, as if they had rubbed the road and made an impression."

The other described the marks thus:

"Yes, sir, I noticed the tire marks. It was no rim mark there, but it seemed to be a pressure mark from the tires."

One of them also said that the tire marks disclosed that the car had traveled a zigzagging course back and forth from the right to the left side of the highway some three or four times before it ran off to the left and down the embankment. He also saw the car that afternoon at a garage where it had been taken and said that "there was a lot of grass between the casing and the tire."

Defendant testified that she was driving at about 50 miles per hour and heard her daughter when she called attention to the bump or knocking. She indicated, however, that she was not impressed by what her daughter said for she testified, "I didn't think anything about the knocking. I just thought, you know, just thought maybe some of the tools in the back were rattling, never thought about anything else happening." However, she further said that shortly thereafter as the car proceeded down the hill, it gained momentum, began to swerve back and forth, and she lost control of it and could not keep it on the road. Her testimony concerning what happened at the moment she lost control of the vehicle follows:

"A. Well, it looked like I just lost control of the car.

"Q. What happened?

"A. Well, now, I will tell you the truth, I don't know whether the tire blew out or whether it just went flat. I wouldn't say for sure exactly which it did, but the car began to zigzag across the road. Of course, I tried to keep it on the right-hand side of the road.

\* . \* \* \* \* \*

"Q. Tell us what you did to try to get it under control.

"A. Well, of course, I tried to straighten it up and I tried to keep it on the road.

"Q. Did you succeed for keeping it on the road for some distance?

"A. No, I don't think I did. I know I went across the road three or four times, and may have been over there oftener than that, and of course when we went over the bank and how we ever got upon the dirt road I just can't see. We just got up there, that is about all that I can say. I can't say about that, and if I hadn't stepped on the gas I don't believe we would have ever gotten on the dirt road.

"Q. You think you may have kept your foot on the gas?

"A. I think I must have."

C. W. Randall, the State Trooper, who arrived on the scene soon after the accident testified that there were tire marks and rim cuts on the highway for about 150 feet back up the road from the point where the car left the road. He said he also traced the marks back to where they began in the right lane of the highway, and he describes them as crossing the center of the road only once from the right side to the left. He is the only witness who stepped off the distance, and from his examination he is quite positive that there were both tire marks and rim cuts in the road and that the marks along the highway did not extend more than 150 feet. He thus described the character of the marks on the hard surface:

"A. It wasn't an even mark. It was broken rubber mark where the metal had hit the highway and marked it. Both rubber and metal marks were on the highway.

"Q. You could see metal and rubber both, metal and rubber marks?

"A. Yes, sir.

"Q. Was that the right mark or left mark of the two you saw going off the hard surface?

"A. It was on the right side."

In answer to a question propounded to him by counsel for plaintiff, he said that from his examination of the physical evidence he estimated that the vehicle was going between 45 and 50 miles per hour when it wrecked. The trooper also testified that the distance from where the automobile left the highway, turned over once or twice and finally came to rest on the side road, was approximately 71 feet, and that upon examination of the ve-

hicle "a break in the side wall of the casing" of the right rear tire was found.

Harry Franklin, a tire expert, who examined the damaged tire, testified that a break in the side wall of the casing, rim cuts in the tire and a large tear in the tube indicated, in his opinion, that the tire had blown out and been run flat.

Daisy Wigfield, one of the elderly ladies who occupied the car, says that she heard a slight noise and in a little while after that the car began to sway from side to side, and the driver got very excited and lost control of the car which went "faster and faster." This increase of speed and loss of control, she said, happened just after plaintiff "spoke about the knock." She also said, "It happened so quick."

The only conclusion that may be properly drawn from this evidence is that the right rear tire "blew out", and that caused defendant to lose control of her car. Plaintiff's evidence, as well as that on behalf of defendant, renders the conclusion inescapable that the tire marks on the hard surface of the road were caused by a suddenly deflated tire.

It is, however, asserted that when defendant's attention was called to the "bump", she should have slowed down or stopped, and that her failure to do so was negligence. Reliance is also had upon the fact that when the car shortly or momentarily thereafter began to swerve and zigzag on the road, defendant pressed her foot on the accelerator instead of the brake, and thus increased the speed. It is then insisted and argued that these facts and circumstances,—*i.e.*, failure to heed the warning and slow down, and application of gas instead of brakes, with resultant excessive speed,—are sufficient to establish gross negligence. But these assertions and arguments fail to take into account the certain fact that defendant's loss of control was caused by the blowout and not by the manner in which she operated the car. If it be conceded that it would have been better to have attempted immediately to slow down the car upon hearing or being apprised of the bump or rattle heard by the occupants, whatever its cause, the failure to do so falls short of amounting to gross negligence. Thereafter, any omission on the part of defendant or failure to control the car was really caused by the flat tire. The excitement and physical difficulties occasioned thereby, and the resultant loss of control of the car were due to that mishap and not to lack of prudence of the driver, if any there was.

It is, we think, conclusively proved that unless the thump or rattle heard was, in fact, the noise occasioned by the "blowout" of the tire, then the "blowout" happened momentarily thereafter and was, whenever and wherever it occurred, the real cause of defendant's difficulty and inability to steer and keep her automobile upon the road.

■ "A mere failure to skilfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest." *Young* v. *Dyer,* 161 Va. 434, 440, 170 S. E. 737.

"We have repeatedly pointed out that gross negligence means something more than lack of ordinary care. In cases like that now before us we have characterized it as, 'an utter disregard of prudence amounting to complete neglect of the safety' of the guest, * * * 'heedless and reckless disregard of the rights of guest' * * * 'conduct which shows an utter disregard of prudence amounting to complete neglect of the safety of another' * * *." *Reel* v. *Spencer,* 187 Va. 530, 535, 47 S. E. (2d) 359.

What was said in *Virginia State Fair Ass'n* v. *Burton,* 182 Va. 365, 371, 28 S. E. (2d) 716, is quite appropriate here. "It is a matter of common knowledge that even at an ordinary speed a deflated tire is likely to cause the driver of a car to lose control of it."

"However, whether a motor vehicle, after loss of control, comes to rest on the right or the left side of the highway is immaterial, for, as stated, no one can predict with any degree of accuracy the movements of a motor vehicle out of control." *Keen* v. *Harman,* 183 Va. 670, 676, 33 S. E. (2d) 197.

"It is a matter of common knowledge that if an automobile, traveling at fifty-five miles per hour, or less, gets out of control it may behave in a manner which seemingly defies all laws of physics * * *." *Richter* v. *Seawell,* 183 Va. 379, 382, 32 S. E. (2d) 62.

■ The most that may be charged against defendant is that she failed to heed plaintiff's inquiry or warning concerning the

"bump" and that when the tire blew out (whether simultaneously with the sound that was heard, or thereafter) defendant in her excitement and effort to steer and hold the car on the road inadvertently applied the gas and lost control of the vehicle. Even though her conduct under the circumstances might have amounted to lack of prudence and skill, it does not measure up to gross negligence. That is all that we need to or do determine.

Citation of additional decisions on this subject would serve no good purpose. In the final analysis the outcome of each case of this nature is governed by its own facts. Here the evidence conclusively establishes that this accident was directly attributable to a blowout of the tire on defendant's automobile while it was proceeding at a lawful speed. Though it may be said that she did not exercise the best judgment by not paying heed to the "bump" and did not skilfully operate and control her car after the emergency arose, yet the evidence as a whole certainly falls well short of proving gross negligence. Apt is the statement of Mr. Justice Smith in the decision of *Sibley* v. *Slayton, ante,* p. 470, 69 S. E. (2d) 466, where he said, "* * * the entire record contains nothing in regard to the driver's conduct or actions that shocks reasonable men and certainly there is nothing to show 'an utter disregard of prudence amounting to complete neglect of the safety' of his guest."

Plaintiff's final contention is that the court committed error when it admitted certain opinion evidence given by State Trooper Randall as to the character, condition or safety of the highway. This alleged error is sought to be raised under the third assignment appearing in plaintiff's Notice of Appeal and Assignments of Error. It is thus designated:

"3. Other errors apparent upon the record."

Such an assignment of error is indefinite and insufficient. It fails to comply with Rule of Court 5:1, § 4 and will not be now considered.

No judgment other than one in favor of defendant could have been properly entered on the evidence. Further consideration of the instructions is thus rendered unnecessary, and the judgment is accordingly affirmed.

*Affirmed.*