# Richmond

DOROTHY KENNEDY v. JUNIUS CLYDE McELROY.

May 3, 1954.

Record No. 4194.

Present, All the Justices.

The opinion states the case.

*Clinton A. Fowler, T. Ryland Dodson* and *Fowler & Dodson*, for the plaintiff in error.

*Meade, Talbott & Tate*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Dorothy Kennedy, herein called plaintiff, was injured when an automobile driven by Junius Clyde McElroy in which she was a guest collided with a stop sign at an intersection in Danville. She brought this action for damages against McElroy, herein called defendant, alleging that her injuries were caused by his gross negligence. A jury returned a verdict in her favor for $1,500 but the court set it aside and entered judgment for the defendant. The only issue on this writ of error is whether there was sufficient evidence of gross negligence to support the verdict.

The accident happened at a point some 300 yards south of the north corporate limits of Danville, where State Highway 41, known as Franklin Turnpike, crosses at right angles U. S. Alternate Highway 29. Franklin Turnpike is a two-lane road running approximately north and south. U. S. Alternate 29 is a three-lane road running approximately east and west. At the time of the accident there was a double stop sign in the middle of Franklin as it entered U. S. Alternate 29 from the north, requiring southbound traffic to stop before entering 29. This consisted of two signs, each about two feet square, attached one above the other to a 4 x 4 which was fastened to part of a telephone pole imbedded in the ground. The word "Stop" was painted on these signs with paint that reflected the light from automobiles.

Double white lines extended northwardly from the stop sign along the middle of Franklin, dividing it into two traffic lanes. The line next to the southbound lane was a solid line extending back two or three hundred yards from the intersection to a point near the north city limit. The line next to the northbound lane was solid back from the intersection for some distance and then continued as a broken line. Franklin Turnpike enters the north city limits on a slight curve and then is straight into the intersection. A driver going south could see the stop sign at the intersection some two or three hundred yards away. The road there was level and on the night of the accident it was dry. The

speed limit was 35 miles an hour and there was a sign to that effect near the city limits.

Some time before the accident the defendant invited Mrs. Kennedy to go with him in his car to a housewarming at the home of a friend north of the city and a short distance off of Franklin Turnpike. On their way they drove through this intersection and reached the house about eight-thirty of an evening in February, 1952. They started back at about 11:30 p. m. with the defendant at the wheel driving south on Franklin toward plaintiff's home in the city. The plaintiff and the defendant were the only witnesses as to what then happened. There is little conflict in their testimony and where conflict exists her evidence must now prevail.

She said the defendant was driving about 50 miles an hour and did not reduce his speed on entering the city limits. The solid white line was on their side as they drove along. As they came around the curve and into view of the intersection she saw a truck, of the type that hauls automobiles, stopped with its lights on at the intersection. She was familiar with the road, knew the stop sign was there, saw it as they approached the intersection, and was expecting defendant to stop. When she saw he was making no effort to slow down and stop, she said to him, "Clyde, that truck is stopped." Defendant then had time to stop behind the truck but instead he picked up speed and started around it. She heard him say, "I am going to hit that sign," it seemed to her as if the truck was coming over on top of her, something hit her on the head and she remembered no more until next morning.

The defendant's car did not hit the truck but struck the stop sign, knocked it down and splintered it over the road. The point of collision with the post was about the middle of the radiator of the car so that the grill was mashed back to the motor in a "V" shape.

The defendant testified that he remembered plaintiff's saying that the truck had stopped ahead of them and he had

already seen it at that time. When he first saw it he did not know whether it was completely stopped or moving slowly, but it had stopped at the time the plaintiff called his attention to it. He said his car was then within 200 or 250 feet of the truck, "so I just eased on up by the truck, I don't know, 25, 30 or 35 feet, and pulled over and gave it gas and started around the truck." Just as he was about even with the back end of the truck he saw there was not enough room to drive between it and the stop sign and just about the time he said "We are going to hit that sign," they "smacked into the sign." When he came to his car was sitting over in the middle of U. S. Alternate 29.

He testified that he knew the intersection well; that he knew he was supposed to stop at the stop sign; knew he was not supposed to cross a solid white line when it was on his side; knew he was not supposed to pass an automobile at or in an intersection; but that it was his intention when he started around the truck to go by it and the stop sign, straight across the intersection and down Franklin Turnpike.

The defendant admits that he was guilty of negligence but argues that it was only simple negligence, not gross negligence. In order for the plaintiff, who was a guest, to recover she must, of course, prove that the defendant's negligence was gross. *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77; Code § 8-646.1.

Gross negligence is that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another; such heedless and reckless disregard of his rights as to be shocking to reasonable men. *Crabtree* v. *Dingus*, 194 Va. 615, 618, 74 S. E. (2d) 54, 56; *Reel* v. *Spencer*, 187 Va. 530, 535, 47 S. E. (2d) 359, 361.

Ordinary negligence and gross negligence differ in degree, while both differ in kind from willful and intentional conduct which is known, or ought to be known, to have a tendency to injure. *Alspaugh* v. *Diggs*, 195 Va. 1, 5, 77 S. E. (2d) 362, 364.

Whether gross negligence has been proved depends on the facts and circumstances in each case and each case is governed by its own facts. Ordinarily the issue is for the jury, and it becomes a question of law for the court only when reasonable men should not differ as to the proper conclusion to be drawn from the evidence. *Alspaugh* v. *Diggs, supra; Sibley* v. *Slayton,* 193 Va. 470, 474, 69 S. E. (2d) 466, 468; *Carr* v. *Patram,* 193 Va. 604, 611, 70 S. E. (2d) 308, 313; *Via* v. *Badanes,* 189 Va. 44, 54, 52 S. E. (2d) 174, 179.

If a number of negligent acts are so combined that reasonable men may differ as to whether their cumulative effect shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence. *Mitchell* v. *Wilkerson,* 193 Va. 121, 127, 67 S. E. (2d) 912, 916; *Drumwright* v. *Walker,* 167 Va. 307, 314, 189 S. E. 310, 313.

If it is shown that the conduct of the defendant was deliberate, that fact constitutes important evidence on the question of gross negligence. *McDowell* v. *Dye,* 193 Va. 390, 398, 69 S. E. (2d) 459, 465.

In *Solterer* v. *Kiss,* 193 Va. 695, 70 S. E. (2d) 329, the accident occurred about 1:30 p. m. of a clear day. The defendant drove his car north on a secondary highway and into an intersection with a primary highway. There was no stop or warning sign at the intersection. There was a bank to the defendant's left which obstructed his view until he was within a few feet of the intersection. He did not stop near enough to see down the primary road to his left, but drove into the intersection in the path of an approaching car. We held that the evidence presented a jury question as to the degree of defendant's negligence. The evidence in the present case gives support to a finding of gross negligence as strong as that in the *Solterer* case, if not stronger. Here there was evidence from which the jury could find that the defendant gave no heed to the requirement that he

reduce his speed to 35 miles on entering the city, but increased his speed to more than 50 miles when he undertook to go around the truck; that he drove across the solid line on his left, knowingly in violation of the law (Code, 1952 Cum. Supp. § 46-222(5)); that he ignored the stop sign which he knew was there and which he saw, and deliberately tried to drive past it and through the intersection contrary to the law (Code § 46-184); and in that effort he passed the truck stopped at the intersection, an act also forbidden by the law (Code, 1952 Cum. Supp. § 46-209(4)).

He did those illegal acts in spite of the warning of his guest, thereby causing her injury and risking his own safety and the safety or life of any who might be approaching the intersection on U. S. Alternate 29. He was asked whether there were any lights of cars coming either way on 29 and he said no, that the only lights he saw were his own and the truck's; but at the speed he was going and with this truck in his way, he could not have been sure of that, certainly not as sure as if he had stopped to make sure in accordance with the purpose of the stop sign.

Under the circumstances shown by the evidence it was a question for the jury to decide whether the defendant was guilty of gross negligence, and their finding that he was, being supported by the evidence, should not have been set aside by the court.

The judgment below is reversed, the verdict of the jury is reinstated and final judgment for the plaintiff is here entered thereon.

*Reversed and final judgment.*