NEWTON SMITH v. FRANK STEPP, GUARDIAN AD LITEM FOR ELIZABETH STEPP, AND JESSE FRANKLIN JONES
AND
GLENDA GAIL SMITH, BY HER NEXT FRIEND, NEWTON SMITH v. FRANK STEPP, GUARDIAN AD LITEM FOR ELIZABETH STEPP, AND JESSE FRANKLIN JONES.

(Filed 15 June 1962.)

**1. Courts § 20—**

In an action to recover for injuries received by a gratuitous passenger in an automobile accident occurring in a Federal parkway within the exterior boundaries of the State of Virginia, the substantive law of the State of Virginia controls and plaintiff is required to show that her injuries resulted from gross negligence of the driver. 16 USCA § 457, Code of Virginia § 8-646.1.

**2. Automobiles § 47—**

Under Virginia law, the sufficiency of the evidence of gross negligence in an action by a gratuitous passenger to recover against the driver must be determined upon the facts and circumstances of each case, and the evidence must be submitted to the jury unless reasonable men should not differ as to the proper conclusion to be drawn from the evidence, considering it together with all reasonable inferences in the light most favorable to plaintiff.

**3. Same—  Evidence of gross negligence of driver held sufficient under Virginia law to be submitted to jury.**

Evidence tending to show that an inexperienced driver presisted in operating a vehicle at an excessive speed, notwithstanding repeated admonitions by the passengers and after repeated instances of negligent operation in running off the road, in slowing down too suddenly because the driver was unaccustomed to power brakes, and in passing another car in a negligent manner, and then, while traveling at excessive speed in disregard of successive signs limiting the speed, lost control of the vehicle in applying the brakes, causing it to skid some several hundred feet until it ran off the right of the highway, then across the highway and down an enbankment, *is held* sufficient to be submitted to the jury on the issue of such driver's gross negligence, since the number of negligent acts are so combined that reasonable men may differ as to whether their accumulated effect shows a form of recklessness or a total disregard of precaution.

**4. Automobiles § 49—**

Evidence that plaintiff passenger entered a car while it was being driven by the owner, that thereafter on the trip the owner permitted an inexperienced person to drive, that plaintiff passenger remonstrated with the inexperienced driver as to speed, at which times the driver would slow down momentarily and then resume excessive speed, *is held* insufficient to show contributory negligence of the passenger as a matter of law in refusing to continue the trip, notwithstanding repeated acts of negligence in the operation of the car by such driver.

APPEAL by plaintiffs from *Phillips, J.,* November 6, 1961 Term of SURRY.

On May 25, 1959, in the State of Virginia, Glenda Gail Smith (hereafter called Glenda) was riding as a guest passenger in a 1954 Cadillac operated by Elizabeth Stepp (hereafter called Elizabeth) on the Blue Ridge Parkway. Jesse Franklin Jones (hereafter called Jones), the owner of the car, was present therein. The car ran off the road and turned over and Glenda sustained personal injuries.

Two actions were instituted against Elizabeth, the operator, and Jones, the owner: one by Glenda, represented by next friend, to recover damages for personal injuries, and the other by Newton Smith, Glenda's father, to recover for his expenses in providing medical care for Glenda and for the loss of Glenda's services. The two actions, by consent, were consolidated for the purpose of trial.

Plaintiffs alleged Elizabeth operated Jones' Cadillac carelessly and heedlessly, in wilful and wanton disregard of the rights and safety of others, in particulars set forth, and thereby caused the wreck and Glenda's injuries; that Jones permitted Elizabeth to continue to operate his car with knowledge she was not a competent driver and was operating the car in such manner; and that Elizabeth was operating the car as the agent of Jones.

Answering, defendants denied negligence and, as further defenses, pleaded unavoidable accident and contributory negligence.

The only evidence was that offered by plaintiffs. At the conclusion thereof, the court, allowing defendants' motions therefor, entered judgments of involuntary nonsuit. Plaintiffs excepted and appealed.

*White & Crumpler, Leslie G. Frye and Harrell Powell, Jr., for plaintiff appellants.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson and W. F. Maready for defendant appellees.*

BOBBITT, J.   It was stipulated "that the accident happened on the Blue Ridge Parkway, within the confines of the State of Virginia, and that the State of Virginia has ceded the area where this accident happened to the Federal Government, and that the Federal Government has exclusive supervision of the road at this point."

An Act of Congress, 45 Stat. 54, provides:

> "In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." 16 U.S.C.A. § 457.

A Virginia Statute provides:

> "§ 8-646.1. Liability for death or injury to guest in motor vehicle.—No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Code of Virginia of 1950, Vol. 2 (1957 Replacement), Title 8, Chapter 29, Article 5.

Decisions of the Supreme Court of Appeals of Virginia, relating to the quoted Virginia statute and defining (1) simple or ordinary negli-

gence, (2) gross negligence, and (3) wilful and wanton disregard of safety, are cited and discussed in *Doss v. Sewell, ante*, 404, ...... S.E. 2d ......, filed simultaneously herewith.

The term "gross negligence" does not appear in the complaint. While the case on appeal shows plaintiffs were permitted to amend, the amendments are not in the record. Appellees' brief indicates the complaint was amended to allege gross negligence. Gross negligence is "something less" than wilful and wanton conduct. *Thomas v. Snow*, 162 Va. 654, 174 S.E. 837. No question is raised as to the sufficiency of plaintiffs' allegations. Hence, notwithstanding the amendment is not before us, we consider the two questions discussed in the briefs: (1) Whether the evidence was sufficient to require submission of an issue as to *gross negligence;* and (2) whether the evidence discloses Glenda was contributorily negligent as a matter of law.

"Whether gross negligence has been proved depends on the facts and circumstances in each case and each case is governed by its own facts. Ordinarily the issue is for the jury, and it becomes a question of law for the court only when reasonable men should not differ as to the proper conclusion to be drawn from the evidence." *Kennedy v. McElroy*, 195 Va. 1078, 81 S.E. 2d 436, and cases cited.

In North Carolina, as in Virginia, in determining its sufficiency for submission to the jury, the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to plaintiffs. See *Gill v. Haislip*, 201 Va. 840, 114 S.E. 2d 603.

The evidence, when considered in the light most favorable to plaintiffs, tends to show the facts narrated below.

On May 25, 1959, about 2:30 p.m., in Mount Airy, North Carolina, Glenda and Elizabeth, two sixteen-year-old girls, walking, were on their way home from school. Jones, driving his Cadillac and accompanied by Don Harris, stopped and invited the girls "to go riding around." The girls got in the back seat. While riding in Mount Airy and then out Highway #89 to Low Gap, Jones was driving and Harris was to his right on the front seat. Before reaching Low Gap, Elizabeth had asked Jones "two or three times" to let her drive. She told Jones she had "a learner's permit" and could drive. They stopped at a Grill near Low Gap to get some drinks. From there, "up the mountain and across the Parkway," Elizabeth did the driving and Jones rode with Glenda in the back seat.

On the trip up the mountain: The road from Low Gap "on up to the top of the mountain is very curvy, mountains on one side, and the valley on the other." Elizabeth "was used to the brakes on a '53 Ford which worked rather hard . . ." Twice, when Elizabeth put on brakes, the car "would bump a little bit." Elizabeth said "she would have to

get used to the power brakes and the power steering." She "started out slow and then she started speeding." Glenda first told Elizabeth to slow down when "she cut out sharp" to pass a car and, when she passed it, "cut back in too close." On one occasion, Elizabeth ran off the road two or three feet, then got back on the road. She was driving about "50 to 55" up the mountain. When Glenda asked Elizabeth to slow down, she would slow down a little bit and then "speeded back up." Glenda asked Elizabeth to let somebody else drive. Elizabeth's reply was that "she was driving." When Jones asked Elizabeth to slow down, she slowed down "just long enough to speed back up." When they reached the top of the mountain, they stopped at a place called "Jimmy's Nite Spot," "another eating place at the top of the mountain." Jones and Harris went inside. The girls stayed in the car.

When Jones and Harris got back in the car, Elizabeth drove toward the Parkway. Before getting on the Parkway, when they came to a stop sign, Elizabeth put on brakes and the car "bounced again." Elizabeth said "she had to get used to the brakes." From the Highway #89 crossing, Elizabeth drove continuously along the Parkway toward Fancy Gap.

On the Parkway: Elizabeth was "going about 55 or 60." Around the curves, "you could hear the tires squealing." When the tires squealed, the car "felt like it was pulling to the right." When Glenda asked Elizabeth to slow down, Elizabeth said "she was doing all right." About a half of a mile before the scene of the wreck, Elizabeth "left the road once more," —"it just weaved off and then back on." Glenda then told her to slow down. Elizabeth said, "Okay," slowed down a little bit, but then "speeded right back up." Just before the wreck, Glenda asked Elizabeth again to slow down. Elizabeth slapped or slammed on the brakes and the car skidded to the right and down the highway, then crossed the highway and went down the embankment on the left. While traveling on the Parkway, both Jones and Harris asked Elizabeth to slow down and be careful. Glenda asked Elizabeth to let somebody else drive.

The general speed limit on the Parkway was 45 miles per hour. Where the speed limit was lower, signs to that effect were posted.

The section of the Parkway from the Highway #89 crossing to the Highway #52 (Fancy Gap) crossing is approximately seventeen miles. In this area, the Parkway runs generally near the top of the mountains, along the crest, at an elevation of about 2950 to 3000 feet. The particular area in which the wreck occurred is known as "Felts Hill." Traveling toward Fancy Gap, the general nature of the Parkway, for several miles before reaching "Felts Hill," is "primarily gently curving through open farm land." Upon reaching "Felts Hill," the Parkway is down-

hill for eight-tenths of a mile. "The top of it is a long gentle curve, then it goes, heading northeast, into a fairly sharp curve before it gets to the bottom." At the bottom, the elevation is about three hundred feet lower. The wreck occurred about half-way down "Felts Hill."

Traveling toward Fancy Gap, two rectangular signs, "Speed 35," face the motorist. The first is approximately four hundred feet from the top of "Felts Hill." The second is approximately fifteen hundred feet beyond the first. The wreck occurred approximately two hundred feet beyond the second sign.

The Parkway Ranger testified he observed these tire or skid marks: The first set of marks extended 136 feet before leaving the pavement. The next set was off the pavement on the right, on the "solid turf, grass shoulder," extending 116 feet. The next set extended diagonally across the twenty-foot (paved) road, a distance of 116 feet. It was 103 feet from the northern end of these skid marks to the wrecked car. The Cadillac had turned over several times and was down the embankment on the left side of the Parkway.

Defendants stress *Hale v. Hale,* 219 N.C. 191, 13 S.E. 2d 221, where *Barnhill, J.* (later *C.J.*), after citing *Young v. Dyer,* 161 Va. 434, 170 S.E. 737, and *Thomas v. Snow, supra,* and other Virginia decisions, stated: "The operation of an automobile at an excessive rate of speed by an inexperienced, unskillful and incompetent person 17 years of age who, by reason of his inexperience, lack of skill and incompetency, lost control of the car which leaves the pavement and goes into a ditch, does not constitute gross negligence." In these and other Virginia decisions cited by defendants, the evidence tended to show proper prior operation of the automobile, with the acquiescence of the passenger, and the evidence as to the negligence of the driver related solely to what occurred on the occasion of the accident.

Here, according to plaintiff's testimony, what occurred on "Felts Hill" was not an isolated incident but the tragic climax of Elizabeth's negligent operation of the Cadillac from Low Gap up the mountain and thereafter along the Parkway toward Fancy Gap. There was evidence that, in addition to specific prior instances of negligent driving, Elizabeth persisted, with the acquiescence of Jones, in operating the Cadillac notwithstanding plaintiff's protests and in disregard of repeated warnings that she slow down and drive more carefully. Her lack of experience and skill, when she persisted in operating the Cadillac under these circumstances, tends to magnify rather than minimize the negligent character of her conduct. Moreover, her persistence in driving down "Felts Hill" at excessive speed, notwithstanding the additional warnings of the "Speed 35" signs, supports the view she was responsible for the emergency situation in which she

slapped or slammed on her brakes in such manner as to cause her to lose control of the car.

"If a number of negligent acts are so combined that reasonable men may differ as to whether their cumulative effect shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence." *Kennedy v. McElroy, supra; Mitchell v. Wilkerson,* 193 Va. 121, 67 S.E. 2d 912; *Drumwright v. Walker,* 167 Va. 307, 189 S.E. 310. When tested by this rule, we are of opinion, and so decide, that the evidence, when considered in the light most favorable to plaintiffs, was sufficient to require submission for determination by the jury of issues as to whether the wreck of the Cadillac and the resulting personal injury and damages were proximately caused by the *gross negligence* of defendants.

It may be conceded the evidence, when considered in the light most favorable to defendants, was sufficient to require the submission for determination by the jury of issues as to whether the alleged contributory negligence of Glenda was a proximate cause of the wreck of the Cadillac. However, when considered in the light most favorable to plaintiffs, it does not establish Glenda's contributory negligence so clearly no other reasonable inference or conclusion may be drawn therefrom and therefore does not establish contributory negligence as a matter of law. *Dennis v. Albemarle,* 243 N.C. 221, 223, 90 S.E. 2d 532. It is noted that Glenda became a guest passenger in the Cadillac when Jones, the owner, was driving it, and that Jones continued to drive it until they reached the Grill at Low Gap. In this connection, see *Dinkins v. Carlton,* 255 N.C. 137, 120 S.E. 2d 543, and cases cited.

For the reasons stated, the judgments of involuntary nonsuit are reversed.

Reversed.