# Richmond

LAURA THORNHILL V. OTIS R. THORNHILL, JR., AND D. W. THORNHILL.

April 10, 1939.

Record No. 2045.

Present, All the Justices.

The opinion states the case.

*Burnett Miller, Jr.,* and *Robert Y. Button,* for the plaintiff in error.

*C. Armonde Paxson* and *Nottingham & Nottingham,* for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

Laura Thornhill instituted this action against her two brothers to recover damages for personal injuries sustained while riding as a guest in an automobile owned by one brother, Otis R. Thornhill, Jr., and operated by the other, D. W. Thornhill. At the conclusion of the introduction of plaintiff's evidence, defendants' motion to strike was overruled. Defendants thereupon called one witness, D. W. Thornhill, after which both sides rested. Defendants then renewed their motion to strike, which was sustained. This ruling of the court is the only error assigned.

A motion to strike out all the evidence is in substance the same as a directed verdict; that is, the party making the motion is attempting to deprive his opponent of a trial by jury. On this point, in *Green* v. *Smith,* 153 Va. 675, 679, 151 S. E. 282, 283, we said: "A motion to strike out all the evidence of the adverse party is very far reaching and should never be entertained where it does not plainly appear that the trial court would be compelled to set aside any verdict for the party whose evidence it is sought to strike out. A motion to strike out all the plaintiff's evidence is closely analogous to a demurrer to the evidence by the defendant; but with this important difference, that upon an adverse ruling by the court the defendant is entitled to have submitted to the jury both the question of the plaintiff's right to recover and the measure of recovery, while a demurrer to the evidence finally takes away from the jury all consideration of the plaintiff's right of recovery and submits it to the court.

■ ■ "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason. *Dove Co.* v. *New River Coal Co.,* 150 Va. 796, 143· S. E. 317; *Limbaugh* v. *Commonwealth,* 149 Va. 383, 140 S. E. 133; *Goshen Furnace Corp.* v. *Tolley's Adm'r,* 134 Va. 404, 114 S. E. 728."

Otis R. Thornhill, Jr., planned to be married on August 6, 1937, in Fishersville, a village a few miles west of Waynesboro. He left his Dodge coach at his home in Culpeper, with instructions to his brother, D. W. Thornhill, to use it for the purpose of transporting his sister, Laura Thornhill, to Fishersville for a rehearsal on August 5 at 5:30 p. m. Laura and D. W. Thornhill left Culpeper a little after 4:00 p. m., and stopped, *en route,* at Charlottsville for another passenger, Judson Miller, who expected to take part in the ceremony. The party left Charlottesville a few minutes after 5:00 p. m. D. W. Thornhill was driving, Laura Thornhill was sitting to his right, and Judson Miller to her right, on the outside. As they left Charlottesville it began to rain. Laura Thornhill cautioned her brother several times about the speed, stating to him that the road was wet and slippery. Some 17 miles west of Charlottesville Thornhill passed a car going in the same direction. He drove back to his right side of the road and, without slacking speed, passed a road sign placed to the right of the highway to give warning of an S curve ahead. As he approached the beginning of the curve, he saw a truck loaded with straw and hay coming out of the curve from the west, at a slow rate of speed. D. W. Thornhill, realizing that he could not negotiate the curve at the speed he was driving, suddenly applied his brakes. The car swerved, skidded to

the left, and struck the left front of the truck. At the time of the impact both front wheels of the truck were on the dirt shoulder to the south of, and entirely off, the hard surface, which was 19 feet wide at this point. As a result of the impact, both Laura Thornhill and Judson Miller were knocked unconscious and remained so for some time thereafter.

Clemmer Ramsey was driving the truck, with Oscar Cohran riding on the front seat with him. Ramsey stated that the truck was loaded with about 4 tons of straw and hay and·was traveling, in third gear, about 15 miles per hour. As they came up the hill and rounded the curve both Ramsey and Cohran saw the car operated by D. W. Thornhill approaching at "a terrific speed." They instantly realized that he would not make the curve at the speed he was driving, so Ramsey turned his truck toward the right bank, and was struck as his left front wheel left the hard surface. These eye-witnesses stated that the Dodge coach was traveling at 50 or 55 miles per hour.

D. W. Thornhill said that as he was "preparing" to make the turn, he saw the truck and realized he could not make the curve. He instantly applied his brakes, and the next thing he knew, his car had collided with the truck. Immediately after the impact, and while at the scene of the accident, he stated that the speed at which he was driving was the cause of the accident, and estimated this speed at 30 to 40 miles per hour.

Defendants state their contention in these words: "While we do not take the position that the speed of the Thornhill car was not a contributing cause of the accident, we do submit that the speed was not excessive, and in light of all the evidence in this case, utterly fails to establish gross negligence." And, again, "neither of these witnesses (Ramsey and Cohran) has told the court that D. W. Thornhill was exceeding the speed limit, which in our judgment is a very pertinent and significant feature of the evidence."

█ In view of the testimony of the occupants of the truck, all that is necessary to refute the contention that D.

W. Thornhill was not operating his car in violation of the traffic laws — that is, at a reckless rate of speed as defined by statute — is to quote the traffic law in force on August 5, 1937. The statute then provided: "Sec. 2154 (109). Restrictions as to speed; reckless driving. — (a) Any person driving a vehicle on a highway shall drive the same at a careful speed not greater nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing. Any person who shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person, * * *, shall be prima facie guilty of reckless driving.

"(b) Any person who shall drive at a speed exceeding the speeds set forth in this subsection shall be prima facie guilty of reckless driving:

*     *     *     *     *     *     *

"Fifth. Forty-five miles an hour under all other conditions.

"(c) Reckless driving within the meaning of this section shall be deemed to include the following offenses, which are expressly prohibited.

*     *     *     *     *     *     *

"Sixth. Exceeding a reasonable speed under the circumstances and traffic conditions obtaining at the time.

*     *     *     *     *     *     *

."(d) Any person convicted of reckless driving as defined in this section, shall be guilty of a misdemeanor and punished as provided in section 2154 (108)."

"Sec. 2154 (112). Drive on right side of highways. — * * *, upon all highways of sufficient width the driver of a vehicle shall drive the same upon the right half of the highway, * * *."

Defendants' other contention is that the evidence was not sufficient to carry the question of defendants' gross negligence to the jury.

In considering this question it may be well to state that, while a sister instituted this action against her brothers, there is no suggestion of collusion between them. Counsel for the respective litigants took particular pains to compliment each opposing litigant upon his fairness, frankness and truthfulness while testifying.

■ It is immaterial whether we consider this evidence "very much as on a demurrer to the evidence," as we stated in *Green* v. *Smith, supra,* and as stated that we should do in Burks Pleading and Pract., 3rd Ed., p. 458; or whether we apply the principles governing the consideration of evidence on a motion to set aside the verdict, as the result of the application of either of these principles will be the same. These last mentioned rules were restated by Mr. Justice Epes in *Thress* v. *Hackler,* 155 Va. 389, 399, 154 S. E. 502, 506, as follows: "In passing upon a motion to set aside a verdict because the evidence is insufficient to sustain the verdict, the guiding principle for the court is not what it may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such a verdict upon the evidence. If this question can be answered in the affirmative the verdict of the jury should be sustained."

■ These principles have been repeatedly stated in varying terms. If there is no evidence in the record tending to prove that defendants were guilty of gross negligence, then the trial court committed no error in sustaining the motion. *Margiotta* v. *Aycock,* 162 Va. 557, 174 S. E. 831; *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63. But, "if there is a conflict in the evidence as to the existence of negligence of a specific character, grade or degree, the matter is for the determination of the jury." *Yonker* v. *Williams,* 169 Va. 294, 300, 192 S. E. 753, 755. "Or if reasonably fair-minded men may differ as to the conclusion of fact to be drawn from the evidence, or if the conclusion is dependent

upon the weight to be given the testimony," a jury is the proper tribunal to decide the question. *Gregory* v. *Seaboard Air Line Ry. Co.*, 142 Va. 750, 756, 128 S. E. 272, 274.

With these guiding rules in mind, we re-examine the evidence and find that, if the case had been submitted to the jury, they could have found that the driver of the Dodge coach, (1) ignored the repeated cautions of plaintiff, (2) passed a highway caution sign without checking his speed, (3) drove 55 miles per hour, and ran too close to the beginning of an S curve to make the turn, around which he could not see, (4) while driving 55 miles an hour over a highway strange to him, and with full knowledge that the surface of the road was very slick, applied his brakes suddenly, and, (5) as a result of the combination of these circumstances, the car skidded from its right side entirely across the hard surface to the left, and collided with a truck. The impact with the truck was only a coincidence, as D. W. Thornhill and the two occupants of the truck stated that the car was traveling too fast to make the curve, and, hence, it would have continued into the bank to the south of the highway if the truck had not happened to be between it and this bank.

The varying degrees of negligence re-adopted in *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, followed in subsequent cases, and now, by chapter 285 of the Acts of 1938, made the statute law, originated, in part at least, in the Roman civil law. The three degrees of civil negligence were said to be *culpa levissima*, slight negligence; *culpa levis*, ordinary negligence; and *culpa lata*, gross negligence. "The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence." *Altman* v. *Aronson*, 231 Mass. 588, 121 N. E. 505, 506, 4 A. L. R. 1185, 1187.

In *Boggs* v. *Plybon, supra,* and *Thomas* v. *Snow*, 162 Va. 654, 174 S. E. 837, we, in general terms, pointed out the distinction between the different degrees of negligence,

citing with approval the distinctions stated in *Massaletti* v. *Fitzroy,* 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088, and *Altman* v. *Aronson, supra.* Most of the recent decisions of this court dealing with the question of gross negligence are cited in the briefs. To discuss these cases separately would needlessly prolong this opinion and would serve no useful purpose. Suffice it to say that in each case the governing principles were applied, with the result that in some cases recovery was allowed and in others it was denied, depending on whether or not the peculiar facts in each case placed it on one side of the border line or the other.

In *Boggs* v. *Plybon, supra,* 157 Va. at page 38, 160 S. E. at page 80, this is said: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court." *New York Central Railroad Co.* v. *Lockwood,* 17 Wall. 357, 382, 21 L. Ed. 627.

In *Thomas* v. *Snow, supra,* we said [162 Va. 654, 174 S. E. 838]: "In adopting this rule this court has reopened in this class of cases the troublesome question of the distinction to be made in the degrees of care and diligence, denying recovery when the host is guilty only of 'ordinary negligence' and permitting recovery when it is established that he is guilty of 'gross negligence.' '* * * it is often difficult to mark the line where the one ends and the other begins. And it must be often left to the jury, upon the nature of the subject-matter and the particular circumstances of each case, with suitable remarks by the judge, to say whether the particular case is within the one or the other.' Chief Justice Shaw, in *Whitney* v. *Lee,* 8 Metc. (Mass.) 91, 91 Am. Neg. Cas. 789."

▮▮▮▮ "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. * * * . It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, shown to have a tendency to injure." This is a part of the definition given by Chief Justice Rugg in *Altman* v. *Aronson, supra,* and quoted with approval in *Thomas* v. *Snow, supra.* While, as Chief Justice Rugg stated, it "does not possess the exactness of a mathematical demonstration," it is, in general terms, the result of the Massachusetts decisions which this court on this point has followed.

▮▮▮ The facts, as heretofore recited, bring the case at bar squarely within the principles above set forth, and the question of whether or not defendant was guilty of gross negligence should have been submitted to the jury.

For the reasons stated, the verdict of the jury will be set aside, the judgment of the court reversed, and the case remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*