# Richmond

## GROVER C. CRABTREE v. EMERY DINGUS AND TROY SALYERS, ADMINISTRATORS OF THE ESTATE OF COSBY MULLENS, DECEASED.

January 26, 1953.

Record No. 4033.

Present, All the Justices.

The opinion states the case.

*Kiser, Vicars & Kiser, S. H. Sutherland* and *George C. Sutherland,* for plaintiff in error.

*Glyn R. Phillips, Hansel Fleming,* for defendants in error.

SMITH, J., delivered the opinion of the court.

The administrators of the estate of Cosby Mullens recovered a verdict and judgment of $12,000 for her death which resulted from injuries received while riding as a guest in an automobile owned and operated by the defendant, Grover C. Crabtree. To that judgment this writ of error was awarded.

The decisive question presented by the assignments of error is this: Was the evidence sufficient to convict the defendant of gross negligence?

On the evening of March 6, 1951, Cosby Mullens, a sixty-eight year old woman, accompanied by her husband, David C. Mullens, Henry Sargent and others went to the defendant's home and requested him, a sixty-seven year old lay preacher, to accompany them to Coeburn, Virginia, to preach at a funeral. Crabtree agreeing to go, the Mullenses and Sargent decided to ride with him while the others went ahead in another car. After supper, the four started to Coeburn on Route No. 72 in Crabtree's 1950 Buick sedan. The defendant and the Mullenses occupied the front seat and Sargent rode alone on the back seat. It was dark and raining by the time they started, but there is no other evidence that visibility was poor. Crabtree was familiar with the highway, for he had traveled it three or four times a week for several years.

The accident occurred after they had gone about eighteen miles at a point where the road makes a sharp curve to the left and then passes over a culvert. This curve was indicated by a warning sign one tenth of a mile from the culvert. The highway at the point of the accident is eighteen feet wide; the culvert is twenty-three feet wide and nineteen feet long, with a guard railing or superstructure of three reinforced concrete posts and two concrete rails on each side, about three feet from the edges of the hard surface. The record is not accurately descriptive, but according to the pictorial exhibits the road is almost

straight for about seventy-five feet from the apex of the curve to the culvert.

The center of the car's bumper hit and cracked the first concrete post on the right side of the culvert, and the front of the car was badly damaged as a result of the impact. Both Mr. and Mrs. Mullens were killed, Sargent suffered a fractured skull, Crabtree received a broken knee cap and serious chest and head injuries, and was hospitalized for about three weeks.

After the accident the car, which had been going up a seven percent grade, slued to its right and rolled back down the bank about nine feet in the direction from whence it had come. It came to rest with the rear end eleven feet from the edge of hard surface.

State Trooper Riner, who went to the scene soon after the accident, testified that he talked to Crabtree in the hospital at Coeburn (the record fails to show the time of this conversation) and that the defendant was badly injured and suffering very much. He also testified that Crabtree told him then that he was "running at approximately 40 miles an hour."

Riner, Trooper R. H. Wilson, and the resident highway engineer, L. R. Treat, were called by the plaintiffs to prove matters pertaining to the road and the construction of the culvert. However, the proof of negligence, if any, must be found in the testimony of Crabtree and Sargent, the only surviving eye-witnesses to the collision.

Sargent, who was called as a witness for the plaintiffs, could not recall the speed of the car nor any other details of the collision. He testified that prior to the accident he saw nothing wrong with Crabtree's driving, that he did not consider it too fast and that he would have asked him to slow down had he thought so. Sargent also testified that no protest was made by anyone regarding the speed of the car or the manner of Crabtree's driving .

The defendant was called as an adverse witness by the plaintiffs and was asked whether his injuries affected his recollection or memory. He answered, "I have thought, while I wouldn't want to make a statement that it has, I have thought it has." He did not think he lost consciousness at the scene of the accident and remembered how he got to the hospital, but did not remember who took him there.

Upon being asked by counsel for the plaintiffs, "just before

the wreck occurred, do you know just what happened or what caused it?'' He answered, ''Just exactly what called my attention, I could not state. I hardly know. I could explain, but you go ahead and ask the questions.'' He was then asked, ''You can't say one thing that caused the wreck?'' Crabtree answered, ''No, sir, it is very dim to my mind, right on the spur of the moment when the car hit the headwall.'' He was then asked whether he could clearly recall the accident. His reply was that he could not, then he went on to say ''There was something called my attention or some way or other when I was making the curve to go in and I cut slightly to the right and when I cut it slightly to the right, I was headed to the headwall.'' He continued, ''No I do not know whether there was an object or whether it was something else. I just cannot make a clear statement, I wish I could, but I can distinctly remember cutting back to the right. * * * I couldn't say to save my soul exactly what called my attention to that point.'' The defendant had no recollection of his speed at the time of the collision. To a question by the court as to whether he slowed down as he approached the curve, he answered, ''Judge I couldn't answer that correctly. I don't know if I did or if I didn't. I just can't remember about it.''

The plaintiffs' attorney also asked the defendant, ''Do you remember seeing the sign which we have talked about, the black arrow sign on the yellow signboard down there before you got to the curve?'' The defendant answered, ''No, sir, I don't remember seeing it.''

There is no evidence that the car skidded at any time before it hit the railing of the culvert or that its right wheels left the hard surface until immediately before the collision.

Under our guest statute, Code 1950, § 8-646.1 and the decided cases, no personal representative of a person transported by the owner or operator of any motor vehicle as a guest is entitled to recover damages against such owner or operator for the death of his decedent resulting from the operation of such motor vehicle, unless such death was caused by or resulted from gross negligence or the willful and wanton disregard of the safety of the guest by such owner or operator.

Gross negligence, as we have often said, is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. *Millard v. Cohen*, 187 Va. 44, 46 S. E. (2d) 2; and the cases there cited.

The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. *Thornhill* v. *Thornhill,* 172 Va. 553, 2 S. E. (2d) 318. It has been described as such heedless and reckless disregard of the rights of another as should shock fair-minded men. *Carr* v. *Patram,* 193 Va. 604, 70 S. E. (2d) 308; *Sibley* v. *Slayton,* 193 Va. 470, 69 S. E. (2d) 466; *Reel* v. *Spencer,* 187 Va. 530, 47 S. E. (2d) 359; and *Carroll* v. *Miller,* 175 Va. 388, 9 S. E. (2d) 322.

The plaintiffs say that there is proof of excessive speed after dark on a wet road at a sharp curve and that the defendant, being familiar with the road, should have known that he could not safely negotiate the curve at the speed he was going. This "proof," however, consists only of inferences drawn from some of the statements attributed to the defendant that he was "running at approximately 40 miles an hour," that he definitely recalled traveling forty-seven miles per hour about two miles before the accident, and that he did not recall whether he slowed down or not. But the defendant nowhere stated the speed of the car immediately before the accident; on the contrary he said he did not know how fast he was traveling. There is no testimony as to the exact speed of the car at the time of the collision. But assuming that the jury concluded that the defendant's statement to Trooper Riner that he was "running at approximately 40 miles an hour" referred to his speed at the moment of the accident, we do not have in this alone proof of gross negligence.

It is also suggested that the damage to the car and the culvert indicates excessive speed and that we have held that physical evidence may under certain circumstances indicate an excessive rate of speed. *Davis* v. *Webb,* 189 Va. 80, 52 S. E. (2d) 141. While the front part of the car was damaged, this is to be expected when a heavy motor car collides with a reinforced concrete post. Certainly this evidence does not justify the conclusion that there was excessive speed amounting to gross negligence.

On the theory that a number of acts of omission or commission may be so combined that the effect is to amount to gross negligence, *Mitchell* v. *Wilkerson,* 193 Va. 121, 67 S. E. (2d) 912; *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310, the plaintiffs have added to the charge of excessive speed the claim that the defendant failed to keep a proper lookout, because he was unable

to say that he saw the warning sign one-tenth of a mile before reaching the scene of the accident and his inability to say that he recalled seeing the superstructure of the culvert until he was within six feet of it.

It is true that Crabtree's testimony clearly shows that at the date of the trial he remembered accurately very few of the details of the collision or the circumstances leading up to it. He was unable to answer a question by the court as to whether he slowed down on approaching the culvert. He did not recall the warning sign, nor did he recall whether he saw the culvert before he reached it. He could not recall his speed at the time of or immediately before the collision, but he was positive that he steered to the right, although he was not clear as to what he saw or thought he saw that caused him to do so.

Under the circumstances, however, little significance can be attached to Crabtree's failure of recollection. His testimony that he did not remember seeing the warning sign does not necessarily indicate that he was not alert and observant. His familiarity with the road and knowledge of the conditions ahead would have lessened the need for him to pay close attention to the road markers. He appeared to be anxious to tell freely and honestly all of the circumstances of the accident which he could recall. In the light of the evidence that he received serious injuries, his failure to relate more of the circumstances of the tragedy suggests that the injury may have been responsible for his inability to explain the accident more fully and satisfactorily. It often happens that a person injured in an accident correctly perceives some of the circumstances, but does not accurately observe all of them. He may be unable subsequently to relate accurately even those circumstances which were precisely observed. Sudden and extreme pain frequently drives from the memory what immediately preceded it. II Moore on Facts 814, Memory § 745.

In this class of actions the plaintiff must, since the burden is on him to prove his case by a preponderance of the evidence, establish not only the fact that the defendant was negligent but that his negligence amounted to more than a mere failure to exercise ordinary care. The burden was on the plaintiffs in this case to establish how and why the accident occurred and that this defendant was guilty of gross negligence. *Keen* v.

*Harman,* 183 Va. 670, 33 S. E. (2d) 197; *Grinstead* v. *Mayhew,* 167 Va. 19, 187 S. E. 515.

In the *Keen Case* the driver lost control of the vehicle, and he and three guests were killed, but when, where, and what caused him to lose control was not proved. The cause of the accident the court said, in reversing a judgment for the plaintiff, is left to speculation and conjecture.

In the *Grinstead Case* the motor vehicle in which the guest was riding when injured crashed into a bridge. The evidence showed that at a point one and a half miles from the scene of the crash the vehicle was traveling from sixty to sixty-five miles per hour, but there was no evidence to show the speed at the instant of the impact. In reversing a judgment for the guest, the court called attention to the duty of the plaintiff to prove his case by facts and proper inferences before there can be a recovery; presumptions and suspicions were declared not sufficient.

A comparison of the instant case with the *Sibley Case,* 193 Va. 470, 69 S. E. (2d) 466, which held that there was not sufficient proof of gross negligence, will illustrate wherein plaintiff failed to carry his burden of proof. In that case the operator of the truck, traveling from forty-five to fifty miles per hour at night on a road which was unfamiliar to him, ran into a left-hand S curve before he realized it and found that he was going too fast to hold the vehicle on the sixteen foot hard surface. As a result of its speed the vehicle left the hard surface and ran onto the shoulder and followed the contour of the pavement about thirty-four feet. Then the right wheels struck an inconspicuous chuck hole in the shoulder and as a result the vehicle went out of control, traveled fifty-eight feet and crashed into a a tree, resulting in the death of the guest. In that case, as here, there was no conflict in the evidence. There the evidence showed that the truck left the hard surface as a result of speed too great for the curve. Here there is no evidence showing excessive speed or that the car left the hard surface and traveled on the shoulder; and here the car passed the apex of the curve where logically it would have gone off at a tangent if it was out of control. On the contrary, we have Crabtree's direct testimony that the car cut to the right because he turned it in that direction.

In finding the operator of the car guilty of gross

negligence, the jury ignored or failed to give proper weight to defendant's explanation, the only evidence in the case explaining why the car collided with the culvert. This testimony of the defendant is uncontradicted, clear, and reasonable. It was, therefore, binding on plaintiffs. They had called defendant as an adverse witness, as they had a right to do. Code 1950, § 8-291; *Butler* v. *Parrocha,* 186 Va. 426, 43 S. E. (2d) 1. Having called him, they were bound by so much of his testimony as was reasonable and uncontradicted. *Nosay* v. *Owens,* 193 Va. 343, 68 S. E. (2d) 531; *Boyd* v. *Brown,* 192 Va. 702, 66 S. E. (2d) 559; *Saunders* v. *Temple,* 154 Va. 714, 153 S. E. 691; 32 C. J. S. 1107, Evidence § 1040.

Sargent and the driver in the instant case testified that the car was not driven at a dangerous speed prior to the collision; that it was under control; and that there was no protest by any of the occupants of the car as to the speed and manner in which it had been driven. There were no skid marks or markings on the road indicating that it was being driven at an excessive speed or was out of control, nor was there any evidence that the car left the hard surface until immediately before the collision, although it had negotiated the most acute part of the curve and had entered an almost straight arc. The uncontradicted testimony shows that the car left the hard surface and crashed into the superstructure of the culvert as a result of the driver's cutting the car slightly.

While the evidence here may show a failure to operate the car skillfully or to be alert and observant or that the car was being operated at too high speed amounting to lack of ordinary care, nevertheless it does not show by the requisite quantum of proof a heedless and reckless disregard of the rights of another which should shock fair-minded men.

The judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment will be entered here for the defendant.

*Reversed and final judgment.*