274

JUSTIN C. FELLOWS, Plaintiff in Error, v. ROY M. SEXTON, Defendant in Error. —327 S. W. (2d) 391.

Eastern Section.   February 26, 1959.

Certiorari Denied by Supreme Court June 10, 1959.

Donald E. Wright and Penn, Hunter, Smith & Davis, Kingsport, for plaintiff in error.

Harry L. Garrett, Kingsport, for defendant in error.

HALE, J.   This is a suit by a guest passenger against his host, the owner and operator of a motor vehicle, for personal injuries sustained in an accident which occurred in Scott County, Va., on May 3, 1957, around 8 P.M.

█   The rights of the parties are controlled by the lex loci embodied in Sec. 8-646.1 of the Virginia Code.   It reads:

*"Liability for death or injury to guests in motor vehicle.*   No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guests resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

The declaration charges:

"The defendant, Justin C. Fellows, drove and operated the car in such a grossly reckless, negligent and careless way and manner as to cause it or permit it to run off the edge of the said public highway or off the main travelled portion of the said highway on the right hand side of the said road (and the car was wrecked and the plaintiff was badly injured).

"Plaintiff avers that the driver of the said car was not keeping a careful and proper lookout ahead on and along the said road at and before the time of wrecking of the car; that he was not watching the road nor where he was driving; that he did not have or keep the said car under control; that he recklessly and wantonly and carelessly failed to keep the car under proper control; that the highway at this point was comparatively straight; that there was no obstruction on the road; that there was no excuse for his letting the car run off the road at the time; that it was the duty of the defendant to keep a lookout ahead at all times along the said highway, which he did not do; that it was his duty to keep the car under control at all times, which he did not do; that it was his duty to keep the said automobile he was driving on the main travelled part of the said road which he did not do; that as a result of this negligence, the defendant ran or permitted the car to run off the road, when there was no good excuse for it; that the manner and way of driving constituted gross and wanton negligence and carelessness on the part of the defendant and that such negligence was the direct and proximate cause of the wrecking of the car and the injuries and damages to the plaintiff."

Defendant plead that he was not guilty; that the automobile was not being operated in a gross, negligent or wilful manner; and that the accident was unavoidable.

Trial by jury resulted in a verdict in favor of plaintiff below for $3,500. He was seriously injured, sustaining a double fracture of his arm and had out of pocket expenses (medical and hospital bills and loss of time) of $3,440,

with a residual permanent impairment of 25% in the use of his arm. The low verdict possibly indicates doubt as to liability.

The assignments of error, three in number, raise only one question, namely there was no material evidence showing the defendant was guilty of gross negligence and, therefore, his motion for a directed verdict should have been sustained at the close of all the proof.

■ The parties were friends and fellow employees of the Holston Defense Corporation of Kingsport and ran around together. On the afternoon of the day in question they drove in defendant's car from Kingsport to Johnson City, a distance of some 25 miles, and from there on to Bristol, another 25 miles, and after driving around a while they decided to go to Gate City, which is in Scott County, Va. When they left it was nighttime, and they drove along Va. Highway 58 westwardly towards Gate City. This road is very crooked with warning signs on it.

After having driven some 12 miles they came to a stretch of road perfectly straight for one-half mile. Both parties agree that the speed was from 40 to 45 miles per hour. Defendant below had done all the driving and no admonition or complaint was made by plaintiff.

At the end of this half mile straight stretch was a bridge immediately followed by a zigzag curve. Some distance east of this bridge and curve was a warning sign "Maximum Safe Speed 25" and above it on the same post was a broken arrow sign indicating a sharp turn to the left, followed by a sharp turn to the right. Immediately west of the bridge was an arrow pointing to the left.

All of this appears from photographs filed in evidence, but there is no testimony that such existed at the time of the accident. However, we assume that the jury could have found they were in existence at that time.

The road at this point appears to be down grade, but there is no testimony as to the percentage of the grade. Nor is there any evidence as to the width of the highway. The road is divided by a white marker line and defendant was on his right side.

As they approached the bridge a car came from the opposite direction and they passed just as defendant was going into the bridge and the other car was coming out of it. After passing the bridge the defendant continued on his right side without slowing down and ran off the road and struck a rock at the side of the road some 90 to 100 feet from the western side of the bridge. This took only a matter of seconds.

Defendant claimed the approaching car blinded him and before he could get his eyes back in focus he ran off the road. The plaintiff testified the lights did not blind him; that it would have to have been on their side of the road to have blinded them.

There is no evidence that either party saw the warning or cautionary sign. The weather was fine, the road was dry, and both parties were sober.

The plaintiff testified:

"Well, me and Mr. Fellows was going down this straight-of-way and the car came around the curve down there, which would throw the lights into the bank, it didn't throw them in our faces, because it was going in a different direction. The car came

around the curve and coming out of the bridge, in the vicinity of the outside of the bridge as we went through, and we went through and instead of Mr. Fellows making the turn in the road that he should have made, he froze and went into the bank there, into those rocks there. Mr. Fellows was driving too fast for the curve, got in it and couldn't get out.''

The defendant testified:

''We were on the stretch before the bridge, but the car came around, this is the best of my knowledge, through the bridge before I got to the bridge and the light did blind me and it took some time for me to get the focus back.

''Then what occurred?

''I was trying to keep over as far as I could and I possibly was driving a little fast to go through the bridge, by not seeing the bridge and the car lights.

''When that occurred, when you went through the bridge, then what occurred?

''Well, I got through the bridge, but I was just over too far and the wheel went off in the ditch and that was it.

''Why were you moving over, what caused you to move over?

''Well, it is just natural. I would say that, but going through the bridge at the speed that I was I just didn't get around it, but the car lights was blinding me or I would have slowed down in time.''

Thus it is that both parties admit the speed was excessive, but we add was not a violation of Virginia's speed limit.

The declaration does not charge excessive speed or that the accident occurred on a curve, unless indeed that is included in the charge that defendant was not keeping a lookout or watching the road and "that he recklessly and wantonly and carelessly failed to keep the car under proper control". However, the parties have treated this evidence as being germane to the issue, and so do we.

This, then, presents this question: Does excessive speed in rounding a sharp curve in and of itself authorize the finding of gross negligence?

We have some reported cases involving guest statutes of other states, but none on that of the Commonwealth of Virginia. See Olins v. Schocket, 31 Tenn. App. 346, 215 S. W. (2d) 18 (Georgia); Hamilton v. Peoples, 38 Tenn. App. 385, 274 S. W. (2d) 630 (Florida); and Schenk v. Gwaltney, 43 Tenn. App. 459, 309 S. W. (2d) 424 (Indiana).

However, there are many Virginia decisions on the quoted statute.

In Alspaugh v. Diggs, 195 Va. 1, 77 S. E. (2d) 362, 364, there is a very thorough discussion of the applicable law. Said the Court:

"The question of gross negligence as distinguished from simple or ordinary negligence has been discussed at length in a great many Virginia cases involving automobile accidents, beginning with Boggs v. Plybon, 157 Va. 30, 160 S. E. 77, and con-

tinuing through Crabtree v. Dingus, 194 Va. 615, 74 S. E. (2d) 54.

"We said in Young v. Dyer, 161 Va. 434, 440, 170 S. E. 737, 739, that 'A mere failure to skillfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest.'

"We have held in numerous cases that in order for a non-paying passenger to recover damages of the operator of a motor vehicle, he must show that the operator was guilty of that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of his safety. ' "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. * * * It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injury" '. Chappel v. White, 182 Va. 625, 29 S. E. (2d) 858, 860; Wright v. Osborne, 175 Va. 442, 9 S. E. (2d) 452; Thornhill v. Thornhill, 172 Va. 553, 2 S. E. (2d) 318.

"Proof of gross negligence depends upon the facts and circumstances of each particular case. If reasonably fair-minded men may differ as to the conclusion of fact to be drawn from the evidence, a jury question is presented; if reasonably fair-minded men may not differ as to such conclusion of fact, the question of whether gross negligence has been established becomes one of law to be decided by the court notwithstanding the verdict of the jury. Lennon v. Smith, 173 Va. 322, 2 S. E. (2d) 340.

"We said in Carroll v. Miller, 175 Va. 388, 399, 9 S. E. (2d) 322, 326, 'In many instances we have to deal with borderline cases, and it is our duty to support verdicts when they, in turn, are supported by credible evidence, but not otherwise. Moreover, it is probably more difficult for a jury to determine whether a proven negligence be simple or gross than it is for them to decide if actionable negligence at all has been shown. Indeed, it is difficult to define gross negligence within the purview of the rule under discussion. Putting one's self in the place of the parties, to be gross it should shock fair-minded men.'

"We have applied these principles in numerous cases and denied the non-paying passenger the right to recover from the defendant motor vehicle operator, on the ground that the evidence of gross negligence was insufficient to submit the question to the jury. In numerous other cases the same principles were applied, and it was held that gross negligence was established, or the evidence was sufficient to present the question to the jury.

"The act of negligence upon which plaintiffs rely in the case under consideration is not so gross as to 'shock fair-minded men.' "

In that case the accident was caused by the momentary inattention of the driver while reaching for a cigarette lighter.

In the subsequent case of Garst v. Obenchain, 196 Va. 664, 85 S. E. (2d) 207, 209, it was said:

"Since the gross negligence rule was adopted in Boggs v. Plybon, 1931, 157 Va. 30, 160 S. E. 77, it has been codified, Code, sec. 8-646.1, and applied in many cases. In some of these cases it was held that the evidence of gross negligence was insufficient to submit the question to the jury, while in others it was held that gross negligence was established, or that the evidence was sufficient to present the question to the jury. Most of these cases were listed by Chief Justice Hudgins in Alspaugh v. Diggs, 195 Va. 1, 6, 7, 77 S. E. (2d) 362.

"In the recent case of Kennedy v. McElroy, 195 Va. 1078, 1081, 81 S. E. (2d) 436, 439, we said: 'Gross negligence is that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another; such heedless and reckless disregard of his rights as to be shocking to reasonable men. Crabtree v. Dingus, 194 Va. 615, 618, 74 S. E. (2d) 54, 56; Reel v. Spencer, 187 Va. 530, 535, 47 S. E. (2d) 359, 361.

" 'Ordinary negligence and gross negligence differ in degree, while both differ in kind from willful and intentional conduct which is known, or ought to be known, to have a tendency to injure. Alspaugh v. Diggs, 195 Va. 1, 5, 77 S. E. (2d) 362, 364.'

"Gross negligence, like all other kinds of negligence, is ordinarily a question of fact for the jury and only becomes a question of law for the court when, under the applicable rules of negligence, reasonable men should not differ as to the proper conclusion to be drawn from the evidence. However, when a party comes into this court with a jury's verdict, approved by the judgment of a trial court, we accept as true all of his credible evidence and all fair inferences which may be drawn therefrom, and all evidence in conflict therewith is disregarded. Kennedy v. McElroy, supra; Alspaugh v. Diggs, supra; McDowell by Gravatt v. Dye, 193 Va. 390, 69 S. E. (2d) 459; Sibley v. Slayton, 193 Va. 470, 69 S. E. (2d) 466; Carr v. Patram, 193 Va. 604, 70 S. E. (2d) 308; Woodmen of the World Life Ins. Society v. Grant, 185 Va. 288, 38 S. E. (2d) 450."

Able counsel for defendant in error says this case "is practically on all fours" with the case at bar. In this we are forced to disagree. In the Garst case the driver was operating his automobile at a speed of from 60 to 65 miles per hour along a winding road, and as he approached a series of three curves he was asked to slow "down a little bit for the curves" which he disregarded. No other car was approaching. The automobile ran 100 feet partly on and off the highway, then left the road completely and ran 98 feet before hitting a tree with such force as to dislodge the motor and knock it back 50 feet from the point of impact. This evidence was held to present a jury question.

Barnes v. Barnes, 199 Va. 903, 103 S. E. (2d) 199, 201, decided April 28, 1958, apparently is the latest utterance

of the Supreme Court of Appeals of Virginia on this subject. Plaintiff's suit was dismissed on what is the equivalent of our motion for peremptory instructions. That case, on its facts, presented a much stronger jury question than the case at bar. A State Trooper testified he found the automobile had crossed over the left side of the shoulder of the road down an embankment, then along the embankment until it struck some fence posts, then hit another embankment, coming to rest upside down 38 feet from the last point of impact. A witness who lived two tenths of a mile distant and who, while in bed, heard the car pass, said it was traveling "awful fast" and estimated its speed at 70 miles an hour. The appellate court, in sustaining the action of the trial court, said:

"Negligence or gross negligence is never presumed. In this instance the burden was on the plaintiff to establish by a preponderance of the evidence that the deceased operated his automobile in such a manner as to show 'an utter disregard of prudence amounting to complete neglect of the safety' of his guest. In our view this has not been done. Undoubtedly the driver lost control of the car but what caused this or when it occurred is not established, and we are not permitted to speculate on this material question. Keen v. Harman, 183 Va. 670, 675, 33 S.E. (2d) 197, 198, 199.

"The plaintiff relies on the physical facts testified to by the State Trooper, and upon the evidence of Clifton Johnson who testified that when the car passed his house, two-tenths of a mile from the scene of the accident, it was proceeding on a straight road, downhill, at a 'fast' rate of speed, 'about 70 miles an

hour'. To say the least, the circumstances surrounding this man's testimony and his opportunity to observe the speed of the car under the related conditions are unusual. Assuming this evidence to be credible, the witness was obviously correct when he stated that he 'had no idea' of the speed of the car at the time of the accident.

"While the physical facts as testified to by Trooper Johnson would justify the inference that the car was proceeding at a considerable speed, there is nothing to indicate that the speed itself was so great as to constitute gross negligence or that it was the proximate cause of the accident.

" 'It is a matter of common knowledge that if an automobile, traveling at fifty-five miles per hour, or less, gets out of control it may behave in a manner which seemingly defies all laws of physics and may be completely demolished when it strikes an immovable object.' Richter v. Seawell, 183 Va. 379, 382, 32 S. E. (2d) 62, 63.

"No presumption of negligence can be gained from the mere happening of an accident. One who affirms negligence must establish it by a preponderance of the evidence, and such evidence must show more than the probability of a negligent act. An inference cannot be drawn from a presumption, it must be founded upon some fact legally proven. Arnold v. Wood, 173 Va. 18, 24, 3 S. E. (2d) 374, 376. Such proof is lacking in the instant case.''

Applying these principles drives us to the inescapable conclusion that the verdict below cannot be sustained.

Reversed and dismissed at cost of plaintiff below.