STATE OF NORTH CAROLINA v. EDWARD KEN HARRINGTON

No. 853SC301

(Filed 3 December 1985)

1. **Criminal Law § 89.10— impeachment of defendant—details of admitted convictions—no entitlement to mistrial**

   The trial court did not err in failing to declare a mistrial when the prosecutor asked defendant numerous questions relating to the details of defendant's admitted prior convictions where the court sustained all defense objections relating to such details; defendant did not volunteer any answers to

the questions to which objections were sustained; some of the questions were permissible under *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819; and a question as to whether defendant had been drinking when arrested for careless and reckless driving was a proper subject of inquiry and the record failed to show that it was asked in bad faith.

**2. Automobiles and Other Vehicles § 130— DWI—gross impairment as aggravating factor**

The finding of a blood alcohol content of 0.20 is not required for the court to make a finding of "gross impairment" as an aggravating factor for driving while impaired pursuant to N.C.G.S. 20-179(d)(1).

**3. Automobiles and Other Vehicles § 130— DWI—determination of gross impairment**

Where a defendant's blood alcohol content was below 0.20, the appellate court will not draw a bright line which will mark where "impairment" ends and "gross impairment" begins. Rather, that determination must depend on the facts of each individual case.

**4. Automobiles and Other Vehicles § 130— DWI—burden of proving aggravating factor**

A factor in aggravation of a conviction for driving while impaired must be proved by the greater weight of the evidence. N.C.G.S. 20-179(o).

**5. Automobiles and Other Vehicles § 130— DWI—finding of gross impairment—sufficient evidence**

The trial court did not err in finding as an aggravating factor for driving while impaired that defendant was "grossly impaired" where there was evidence tending to show that defendant drove erratically and did not keep his car in its lane of travel; defendant was obviously unsteady on his feet, slurred his speech, and had difficulty answering routine questions; defendant could not perform any of the four field sobriety tests satisfactorily; defendant's blood alcohol content was 0.14; and defendant admitted to the arresting officer that he was under the influence of alcohol.

**6. Criminal Law § 142.3— DWI—validity of condition of probation**

A condition of probation for driving while impaired that defendant not go upon the premises of any business or private club licensed for the sale or on premises consumption of alcoholic beverages between 8:00 p.m. and 6:00 a.m. the following day was not unduly burdensome, was sufficiently related to defendant's rehabilitation, and thus was valid. N.C.G.S. 15A-1343(b1)(9).

APPEAL by defendant from *Winberry, Judge*. Judgment entered 21 March 1984 in Superior Court, PITT County. Heard in the Court of Appeals 16 October 1985.

Defendant appeals a conviction of driving while impaired (DWI).

*Attorney General Thornburg, by Assistant Attorney General W. Dale Talbert, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender David W. Dorey, for the defendant-appellant.*

EAGLES, Judge.

Defendant brings forward three assignments of error, one relating to questions asked at trial regarding prior convictions and two relating to punishment, challenging (1) the trial court's finding in aggravation that defendant was "grossly impaired" and (2) a condition of probation. We find no error.

I

State Trooper Davis saw defendant drive by at 1:00 a.m. and began following him, originally because he saw a "state-owned" license plate on defendant's car. Davis followed defendant about one-quarter mile, observing him come to an abrupt stop, make a wide left turn, and weave between two southbound lanes. Davis stopped defendant. Davis noticed that defendant had a strong odor of alcohol about him, his eyes were red and watery, and he walked unsteadily. Defendant failed all four field sobriety tests, and had a blood alcohol concentration (BAC) of .14 when tested approximately forty minutes later. Davis testified that defendant told him he had had four or five mixed drinks within four hours of the stop, and admitted being under the influence. Defendant testified that he had only drunk one beer but had taken a heavy dose of cough medicine to combat a cold, and denied making the admissions to Davis. Upon a jury verdict of guilty of DWI, judgment imposing a sentence of 72 hours active imprisonment, six months imprisonment suspended for five years on conditions of probation, and $1,300 in costs and fines was entered.

II

[1] Defendant testified at trial. On cross examination the prosecutor asked him about his prior convictions:

Q. What have you been convicted of, Mr. Harrington?

A. Speeding. Careless and reckless driving and a misdemeanor larceny.

Q. When were you convicted of careless and reckless driving?

MR. MILLER [Defense Counsel]: Objection.

THE COURT: Sustained.

Q. What court were you convicted in?

MR. MILLER: Objection.

THE COURT: Sustained.

Q. Do you recall what car you were driving?

MR. MILLER: Objection.

THE COURT: Sustained.

Q. Had you been drinking any alcoholic beverages at the time you were arrested on that charge?

MR. MILLER: Objection and motion for mistrial.

THE COURT: Sustained and denied.

Q. How many times have you been convicted of speeding?

MR. MILLER: Objection.

THE COURT: Sustained.

Q. Have you ever been convicted of speeding?

MR. MILLER: Objection.

THE COURT: Sustained.

Q. What else did you say you had been convicted of other than reckless driving and speeding?

MR. MILLER: Objection.

THE COURT: Overruled.

A. Misdemeanor larceny.

Q. When was that?

MR. MILLER: Objection.

THE COURT: Sustained.

Q. Can you tell us what it was you were convicted of stealing?

MR. MILLER: Objection. Motion for mistrial.

THE COURT: Sustained. Denied. Let's move on. Anything further?

MRS. AYCOCK [Prosecutor]: I don't think so. That's all. (Exceptions omitted.)

Defendant has excepted and assigned error, arguing that the State's improper questions prejudiced him by innuendo.

A

It is well established that specific acts of bad conduct may be inquired into on cross examination for purposes of impeachment. *State v. Purcell,* 296 N.C. 728, 252 S.E. 2d 772 (1979); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). The Supreme Court has specifically declined to set precise limits for the scope of cross examination for impeachment, requiring only that "(1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith." *Id.* at 675, 185 S.E. 2d at 181. The abuse of discretion standard is a high one, and ordinarily no abuse occurs unless the prosecutor affirmatively places before the jury his own opinion or makes totally unfounded or overbroad insinuations, *see State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981) (collecting cases), or the court otherwise allows the questioning to "get out of hand." *See State v. Thomas,* 35 N.C. App. 198, 241 S.E. 2d 128 (1978). The admission by a defendant of a prior conviction does not preclude further inquiry. The cross-examiner may also ask about the time and place of the conviction and the punishment imposed. *State v. Finch,* 293 N.C. 132, 235 S.E. 2d 819 (1977).

B

In the instant case, defense counsel objected each time only generally and objected to some questions which were permissible under *Finch.* The court sustained all defense objections relating to the details of the admitted convictions. Defendant did not volunteer any answers to the questions to which objections were

sustained. *See State v. Maccia*, 311 N.C. 222, 316 S.E. 2d 241
(1984). Of the three unanswered questions urged most strongly as
error, responsive answers to the two concerning the type of car
and the article(s) stolen could have contained little to prejudice
the defendant. The third question, whether defendant had been
drinking when arrested for careless and reckless driving, involved
misconduct possibly separate from the act of improper driving,
*see* G.S. 20-140, 20-138.1, and could be a proper subject of inquiry.
*See State v. Atkinson*, 309 N.C. 186, 305 S.E. 2d 700 (1983)
(distinguishing proper examination into defendant's efforts to
avoid criminal investigation from improper examination into de-
tails of underlying charge). On this record, however, we find no
abuse of discretion regarding the scope of cross examination, no
prejudice to defendant, and no basis for declaring a mistrial.

C

Defendant argues that the prosecution acted in bad faith in
asking whether he had been drinking when arrested, since the
State had his driving record, and since the prosecution did not
respond when defense counsel asserted that no alcohol was in-
volved in the prior offense. For defendant to prevail the record
must affirmatively show that the prosecution acted in bad faith.
Bad faith will not be implied from an otherwise silent record.
*State v. Dawson, supra, followed State v. Corn*, 307 N.C. 79, 296
S.E. 2d 261 (1982). As we noted above, the question appears to
have been permissible since we find no evidence of record (as op-
posed to the bare assertion of defense counsel) that alcohol was
not involved in the prior offense. The record does not disclose bad
faith. Accordingly, we conclude that defendant was not preju-
diced.

III

Defendant next assigns as error that the court erroneously
found as a statutory factor in aggravation that defendant was
"grossly impaired." The statutory basis for the finding is G.S.
20-179(d)(1): "Gross impairment of the defendant's faculties while
driving or an alcohol concentration of 0.20 or more within a rele-
vant time after the driving." This language is not explained else-
where in Chapter 20 nor has it been judicially construed. In
construing "gross impairment," the intent of the legislature con-
trols; we look first to the plain and ordinary meanings of the

words, with an eye to previous enactments and decisions construing similar statutes. *See generally In re Banks*, 295 N.C. 236, 244 S.E. 2d 386 (1978).

### A

"Gross impairment" must be defined with reference to "impairment." "Impairment" does not appear to have any special legal meaning, but simply means "weakening, making worse, diminishment." *See* Black's Law Dictionary 677 (5th ed. 1979). Under our former "driving under the influence" statutes, the test was whether the accused had "drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs, to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties." *State v. Carroll*, 226 N.C. 237, 241, 37 S.E. 2d 688, 691 (1946). The new statute, 1983 N.C. Sess. Laws c. 435, s. 24, *codified at* G.S. 20-138.1, consolidated existing impairment offenses into a single offense with two different methods of proof, but it does not appear to have changed the basic definition of "impaired." *See State v. Shuping*, 312 N.C. 421, 323 S.E. 2d 350 (1984); *State v. Coker*, 312 N.C. 432, 323 S.E. 2d 343 (1984).

Under our statutes, the consumption of alcohol, standing alone, does not render a person impaired. *State v. Ellis*, 261 N.C. 606, 135 S.E. 2d 584 (1964). An effect, however slight, on the defendant's faculties, is not enough to render him or her impaired. *State v. Hairr*, 244 N.C. 506, 94 S.E. 2d 472 (1956). Nor does the fact that defendant smells of alcohol by itself control. *State v. Cartwright*, 12 N.C. App. 4, 182 S.E. 2d 203 (1971). On the other hand, the State need not show that the defendant is "drunk," i.e., that his or her faculties are *materially* impaired. *See State v. Painter*, 261 N.C. 332, 134 S.E. 2d 638 (1964). The effect must be appreciable, that is, sufficient to be recognized and estimated, for a proper finding that defendant was impaired. *See State v. Felts*, 5 N.C. App. 499, 168 S.E. 2d 483 (1969) (new trial on other grounds).

### B

"Gross" is susceptible to a range of meanings: "great, culpable, general, absolute"; "out of all measure, . . . flagrant,

shameful." Black's Law Dictionary 632 (5th ed. 1979). Our courts have defined it as meaning "out-and-out, complete, utter, un-mitigated." *In re Faulkner*, 38 N.C. App. 222, 247 S.E. 2d 668 (1978) ("gross incompetence"). They have also defined "gross negligence" as ordinary negligence magnified to a high, even shocking, degree, *Doss v. Sewell*, 257 N.C. 404, 125 S.E. 2d 899 (1962), *following Crabtree v. Dingus*, 194 Va. 615, 74 S.E. 2d 54 (1953), but have stopped short of equating it with willful or wan-ton negligence. *Doss v. Sewell, supra. See Pleasant v. Johnson*, 312 N.C. 710, 325 S.E. 2d 244 (1985) ("twilight zone" of varying degrees of negligence).

## C

[2] Defendant urges vigorously that the language of the statutory factor itself suggests that "gross impairment" be con-sidered equivalent to a BAC of 0.20. However, we note that prior to the 1983 amendments the courts consistently rejected the no-tion that proof of BAC of 0.10 constituted proof of impairment. *See, e.g., State v. Cooke*, 270 N.C. 644, 155 S.E. 2d 165 (1967). The legislature, by unequivocal enactment, made the blood alcohol con-tent of 0.10 proof of one type of driving while impaired offense. *State v. Shuping, supra; State v. Rose*, 312 N.C. 441, 323 S.E. 2d 339 (1984). Despite this change, and despite the critical impor-tance of BAC readings in the district courts, the statutory BAC is not a *sine qua non* of DWI. As before, the State may prove DWI where the BAC is entirely unknown or less than 0.10. *State v. Sigmon*, 74 N.C. App. 479, 328 S.E. 2d 843 (1985) (BAC of 0.06 did not create presumption that defendant *not* impaired; conviction, based on opinion of arresting officer, affirmed). While the statu-tory BAC of 0.20 may provide a "bright line" for determining "gross impairment," the finding of BAC of 0.20 clearly is not re-quired for the court to make the finding of gross impairment. The fact that defendant in this case showed a BAC of 0.14 therefore did not *prevent* the court from finding "gross impairment."

## D

[3]  It appears then that "gross impairment" is a high level of im-pairment, higher than that impairment which must be shown to prove the offense of DWI. As demonstrated by the foregoing dis-cussion, where the BAC is below 0.20, we do not draw a bright line which will mark once and for all where "impairment" ends

and "gross impairment" begins. That determination must depend on the facts of each individual case. In other situations where various levels of culpability are presented, the finder of fact ordinarily decides what level the evidence shows. *See Brewer v. Harris*, 279 N.C. 288, 182 S.E. 2d 345 (1971) (no negligence, negligence, or willful and wanton negligence); *State v. Stanley*, 310 N.C. 332, 312 S.E. 2d 393 (1984) (sufficiency of evidence that a killing was especially atrocious discussed).

[4]   If the evidence is sufficient to submit a choice to the finder for its decision, the decision itself is not ordinarily reviewable. *See In re Caldwell*, 75 N.C. App. 299, 330 S.E. 2d 513 (1985). The burden to prove a factor is by the greater weight of the evidence, G.S. 20-179(o), similar to the preponderance standard used in the Fair Sentencing Act. G.S. 15A-1340.4; *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). The greater weight of the evidence does not mean the number of witnesses or volume of testimony, but involves a reasonable impression from the totality of the evidence and circumstances. *Id.* at 596, 300 S.E. 2d at 697. Unless the evidence *compels* the finding of a certain factor, *see State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983), the crucial test on appeal is not whether the finder of fact erred in actually making the finding, but whether there was sufficient evidence of the factor before the finder to allow consideration of the factor in the first place.

E

[5]   We believe that the evidence in the present case sufficed to allow the court to consider whether defendant was grossly impaired. Officer Davis testified that defendant drove erratically and did not keep his car in its lane of travel. He was obviously unsteady on his feet and slurred his speech, and had difficulty answering routine questions. Defendant could not perform any of the four field sobriety tests satisfactorily. Defendant's BAC was .14; he admitted to Davis that he was under the influence of alcohol. The evidence showed a person seriously affected by alcohol. We believe the court's finding was proper. The assignment is overruled.

IV

[6]   As a condition of probation, the court required that defendant "[n]ot go upon the premises of any business or private club

licensed by the State of North Carolina for the sale or the on premises consumption of alcoholic beverages between 8:00 p.m. and 6:00 a.m. the following day." Defendant assigns error, arguing that this condition was unduly burdensome and unrelated to his rehabilitation.

Under G.S. 15A-1343(b1)(9), formerly G.S. 15A-1343(b)(17), the trial court may in addition to the statutorily described conditions impose "any other conditions . . . reasonably related to [defendant's] rehabilitation." The court has substantial discretion in devising conditions under this section. *See State v. Rogers,* 68 N.C. App. 358, 315 S.E. 2d 492, *cert. denied,* 311 N.C. 767, 319 S.E. 2d 284 (1984), *appeal dismissed,* --- U.S. ---, 83 L.Ed. 2d 766, 105 S.Ct. 769 (1985). A variety of conditions have been found "reasonably related" under this section. *State v. Cooper,* 304 N.C. 180, 282 S.E. 2d 436 (1981) (stolen goods offense; defendant not operate motor vehicle between 12:01 a.m. and 5:30 a.m.); *State v. Rogers, supra* (witness tampering; defendant not practice law); *State v. Simpson,* 25 N.C. App. 176, 212 S.E. 2d 566 (false pretenses in construction contract; limiting defendant's construction employment), *cert. denied,* 287 N.C. 263, 214 S.E. 2d 436 (1975). In none of these cases was the restriction found unduly burdensome.

The contested condition here did not restrict defendant's livelihood, *compare Rogers* and *Simpson,* nor did it prevent him from entering any premises during the day and even purchasing alcohol. Rather it reasonably is aimed at preventing recurrence of the subject misconduct by keeping defendant away from alcohol in public places during the hours when he would most likely be tempted to drink and drive. The loss of some convenience in shopping does not appear unduly oppressive when compared to the restrictions on employment previously approved in the cases cited. The assignment is therefore overruled.

CONCLUSION

We conclude that defendant has not shown any prejudicial error in the trial, that the sentence was within the limits allowed by law for this offense, and that the complained of conditions of probation were reasonably related to defendant's rehabilitation.

No error.

Judges WHICHARD and COZORT concur.